No. 95-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

PAUL WOODS,

Defendant and Appellant.


APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Jefferson,
Honorable Frank M. Davis, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Lonnie J. Olson (argued), Allen Smith, Jr. (argued), and
Brenda K. Elias, Montana Advocacy Program, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General;
John Paulson (argued), Assistant Attorney General, Helena, Montana

Valerie D. Wilson, County Attorney, Boulder, Montana


Heard:  April 11, 1997

Submitted:  April 22, 1997
Decided:  October 9, l997

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Paul Woods appeals from an order of the Fifth Judicial District Court, Jefferson County, denying his petition for release from the Montana State Hospital. We affirm.

The issue on appeal is whether the District Court properly denied Woods' petition for release from the Montana State Hospital.

In 1974, a criminal information was filed in the District Court against Woods, who was then thirty-five years old. The information charged Woods with felony sexual assault, alleging that he had knowingly subjected several young boys to sexual contact without consent by committing fellatio on one of them and by having others pose nude so that he could photograph them engaging in actual or feigned homosexual activities.

At his counsel's request, Woods was committed to the Montana State Hospital at Warm Springs, Montana, for a psychiatric examination. The examining physicians gave Woods diagnoses of borderline mental retardation and "other sexual deviation," and noted that he had poor judgment and poor impulse control. In their opinion, Woods did not have the capacity to understand the proceedings against him, and he was not able to assist in his own defense.

After the State Hospital filed its report, Woods moved for acquittal on the criminal charge against him on grounds of mental disease or defect, pursuant to 95-507 and -508, R.C.M. (1947). The District Court entered judgment acquitting Woods of the charge against him and committed him to the custody of the superintendent of the Montana State Hospital.

Seven years later, the superintendent of the State Hospital petitioned the District Court for Woods' conditional release. The court ordered that Woods be conditionally released from the State Hospital for up to five years, under a gradual community reentry program. It later ordered that Woods be examined by several professionals, including Dr. William D. Stratford. Stratford's report affirmed Woods' prior diagnoses of mild mental retardation and sexual deviancy. Stratford further commented:

One of the most alarming things about Mr. Woods is that he can justify his pedophilic behavior. He does, with a little coaxing, believe and reiterates that this conduct is fine and that there is nothing wrong with it. Regardless of whether other people catch him or not, that is their concern but he feels perfectly justified in doing what he alleges that their parents also do with them. He believes that their parents also take pictures of them in the nude and that he is doing nothing more than that.

As a result of his clinical evaluation, Stratford concluded that he "definitely would not support any consideration of community placement or a gradual release system for Mr. Woods at this time or in the foreseeable future."

Woods continued to live at the State Hospital after Stratford's report was filed.

Several times each year, the court granted motions by members of Woods' family that he be released to their custody for visits of up to a few weeks at a time.

In 1994, Woods filed a petition for unconditional release from the State Hospital.

He attached to his petition a 1993 psychiatric evaluation by Dr. Ardean Moore, whose diagnoses of Woods were pedophilia, in remission; borderline intellectual functioning;

and passive-aggressive personality. Moore opined that Woods "does not present a substantial risk or a serious threat of serious bodily injury or death to himself or others."

Stating that Woods "is not seriously mentally ill and has not shown dangerousness for some time," Moore recommended that he be considered for discharge.

The District Court appointed counsel to represent Woods and ordered Dr. Timothy J. Casey, a Ph.D. psychologist, to conduct a mental examination of him. In his subsequent report, Casey noted that while Woods had enjoyed a rather open environment within the State Hospital, questions had been raised about his capacity to function within the community. Casey stated that Woods is in "enormous" denial and "has consistently denied the presence of any problems and consequently has been resistive to treatment programs designed to address his needs. . . . Since he denies any problems of a sexual nature, he is unsuitable for a sex offender program." According to Casey, Woods' enormous denial and rationalization for his behavior are exemplified by his statements that his victims' parents asked him to photograph the children in the nude because they were poor and could not afford a camera. Casey opined that Woods was not a suitable candidate for conditional release from the State Hospital.

The District Court next held a hearing on Woods' petition, at which it admitted into evidence the reports of Moore and Casey and heard the arguments and recommendations of counsel. At the hearing, the county attorney drew the court's attention to a letter the court had received and placed in the court file in 1994, from Woods' three sisters.

The letter described a 1993 incident in which Woods, on a visit to one of his sisters and her family, told his ten-year-old nephew that "good friends will even take their clothes off, if they are good friends." In the letter, Woods' sisters expressed their opposition to and concern about the consequences of any release of Woods from the State Hospital.

The court entered written findings and conclusions setting forth the history of the case. It concluded that Woods continued to suffer from a mental disorder, disease, or defect which caused him to present a substantial risk of serious bodily injury or imminent threat of physical injury to other persons, particularly young children. The court denied

Woods' petition for release.

Woods appealed to this Court. After briefing had been completed, we remanded for further proceedings to obtain expert opinions on whether Woods' condition and behaviors constitute a "mental disease or defect that causes the person to present a substantial risk of serious bodily injury or death to the person or others . . . or a substantial risk of substantial property damage," as required for continued commitment under 46-14-302, MCA.

At a second evidentiary hearing in June 1996, the District Court heard testimony by Casey, who had reexamined Woods in January 1996 following this Court's remand order, and by a clinical psychologist, Dr. Judy Bowman, who was on Woods' treatment team at the State Hospital. Bowman testified that Woods' treatment team concurred in the opinion that he continued to suffer from the same mental disease or defect that had caused him to be committed to the State Hospital in the first place. She opined that it would not be appropriate to place Woods in a less restrictive setting until he has had treatment for pedophilia--which has been offered but he has refused--and that he presented a substantial risk of reoffense if he were discharged without treatment. Casey testified that his findings as a result of his examinations of Woods were that there was essentially no change in Woods' condition from 1974 to the present time and, in his opinion, Woods presented a risk of reoffense.

Woods presented the testimony of one of his friends, with whom he proposed to live upon his release from the State Hospital. The friend, who had himself been diagnosed as a pedophile, offered to share his home in Billings, Montana, with Woods.

Following the second hearing, the District Court again concluded that Woods continued to suffer from a mental disease or defect and constituted a substantial and imminent risk for further sexual offenses. The court denied the petition for release from the State Hospital. The record was then returned to this Court for the resumption of this appeal.

Discussion

Did the District Court properly deny Woods' petition for release from the Montana State Hospital?

Woods relies upon Foucha v. Louisiana (1992), 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437, in arguing that constitutional due process and equal protection guarantees require the State to prove that he is both mentally ill and dangerous in order for his commitment to stand. He maintains that these requirements were not met.

In Foucha, Terry Foucha challenged the Louisiana statutes under which he was committed to a psychiatric hospital after being found not guilty of criminal offenses by reason of insanity. Foucha was diagnosed as having an antisocial personality, an untreatable condition not classed as a mental disease. He claimed that Louisiana's statutes denied him due process of law and equal protection, because they allowed a

person acquitted by reason of insanity to be committed to a mental institution until he is able to demonstrate that he is not dangerous to himself and others, even though he does not suffer from any mental illness.

The State of Louisiana did not claim that Foucha was mentally ill, but instead argued for his continued confinement under a statutory provision permitting confinement based upon dangerousness alone. Additionally, the statutory scheme placed the burden on the defendant to prove that he was not dangerous. In reaching its decision, the Supreme Court upheld the rule that "the acquittee may be held as long as he is both mentally ill and dangerous, but no longer." Foucha, 504 U.S. at 77. The Court reversed a lower court order returning Foucha to a mental institution, and held that the burden of proving the grounds of insanity and dangerousness must be upon the State and that proof must be by clear and convincing evidence. Foucha, 504 U.S. at 86.

Montana's statutory procedures for cases involving issues of mental disease or defect of a criminal defendant have been amended since Foucha. Commitment of a person to the custody of the Department of Public Health and Human Services after a finding of not guilty by reason of lack of mental state is subject to an annual treatment review. Section 46-14-301(5), MCA. Such a person may be discharged when

the person no longer suffers from a mental disease or defect that causes the person to present a substantial risk of serious bodily injury or death to the person or others, a substantial risk of an imminent threat of physical injury to the person or others, or a substantial risk of substantial property damage[.]

Section 46-14-302(1), MCA. The term "mental disease or defect" does not include an abnormality manifested only by repeated criminal or other antisocial behavior. Section 46-14-101, MCA.

Application for discharge or release may be made by the director of the institution to which the person was committed, the director of the Department of Public Health and Human Services, or the person committed. Section 46-14-302(1) and (2), MCA. Upon application for release, the court must appoint a psychiatrist or licensed clinical psychologist to examine the person and report as to the person's mental condition. Section 46-14-302(3), MCA. The committed person also has the right to secure a professional person of his choice to examine him and testify on his behalf. Section 46-14-302(4), MCA.

If the court is not satisfied from the report of the appointed psychiatrist or clinical psychologist that the committed person may be released because he no longer suffers from a mental disease or defect causing him to present a substantial risk of serious bodily injury or death to himself or others, the court must order a hearing on the issue. Section

46-14-302(6), MCA. The burden is upon the State to prove by clear and convincing evidence that the person may not be safely discharged or released because the person continues to suffer from a mental disease or defect that causes the person to present a substantial risk of:

(i)  serious bodily injury or death to the person or others;

(ii)  an imminent threat of physical injury to the person or others; or

(iii)  substantial property damage.

Section 46-14-302(6)(b), MCA.

Woods does not challenge the facial constitutionality of the Montana statutes concerning commitment of persons found not guilty due to lack of mental state. He does contend, initially, that his right to due process was violated by this Court's authorization of a second hearing in this matter. He contends that the State failed in its burden of proof at the first hearing and should not have been given a second opportunity to prove its case.

This argument  was considered and rejected when this Court denied Woods' petition for rehearing on this Court's remand order. Under the doctrine of law of the case, a prior decision of this Court resolving a particular issue between the same parties in the same case is binding and cannot be relitigated. State v. Black (1990), 245 Mont. 39, 44, 798 P.2d 530, 533. We hold that this Court's previous resolution of the issue concerning the second hearing remains binding.

The dissent nevertheless insists that the second hearing ordered by this Court represented a denial of Woods' right to due process. This Court has noted that the fundamental requirements for due process are notice and an opportunity for hearing appropriate to the case. Matter of Adoption of K.L.J.K. (1986), 224 Mont. 418, 421, 730 P.2d 1135, 1137. These fundamental requirements were satisfied by the proceedings here, including this Court's remand order. Woods was given adequate notice and opportunity to challenge the State's evidence and present his own evidence concerning his mental condition and dangerousness. The supplemental proceedings herein were an expansion on the hearing on the petition rather than a second or separate hearing. The remand order afforded due process to Woods by requiring the District Court to reconsider its findings, which were adverse to the application for discharge, on the statutory requirement of "mental disease or defect" in the light of expert testimony directed specifically to that issue.

Woods' central argument is that the record supports neither a finding that he is mentally ill nor the finding that he is dangerous, especially by the clear and convincing evidence standard of proof required under Foucha and  46-14-302, MCA. This Court's standard of review of findings of fact was set forth in Interstate Production Credit

v.

DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287: whether substantial evidence supports the findings, whether the district court misapprehended the effect of the evidence, and whether this Court has a definite and firm conviction that the trial court made a mistake.

First, we consider whether the District Court erred in determining that the State had presented clear and convincing evidence that Woods suffered from a mental disease or defect. As Woods points out, the experts agree that he is not and has never been seriously mentally ill. However, the question under 46-14-302, MCA, is not whether Woods is seriously mentally ill, but whether he suffers from a mental disease or defect that causes him to present a substantial risk of (1) serious bodily injury or death to himself or others, (2) an imminent threat of physical injury to himself or others, or (3) substantial property damage.

The absence of a constitutional requirement that a person confined be found "mentally ill," per se, has recently been clarified by the United States Supreme Court in Kansas v. Hendricks (1997), ___ U.S. ___, 117 S.Ct. 2072, 138 L.Ed.2d 501. In Hendricks, the Court ruled that the Kansas Sexually Violent Predator Act (Kansas Act), Kan. Stat. Ann. 59-29a01 et seq. (1994), comports with due process requirements and neither runs afoul of double jeopardy principles nor constitutes impermissible ex post facto lawmaking. The Kansas Act establishes a civil commitment procedure for the long-term care and treatment of sexually violent predators, "[a] small but extremely dangerous group" who do not have a mental disease or defect that renders them appropriate for involuntary treatment pursuant to general involuntary civil commitment statutes, but who generally have antisocial personality features which are unamenable to existing mental illness treatment and render them likely to engage in sexually violent behavior. Hendricks, a repeat-offender pedophile, has rejected treatment for his condition on the grounds that "treatment is bull----." Upon his release from prison, Hendricks was civilly committed to the custody of the Kansas Secretary of Social and Rehabilitation Services as a sexually violent predator.

The Supreme Court noted that the States have always provided, in certain narrow circumstances, for the forcible civil detainment of persons who are unable to control their behavior and who therefore pose a danger to the public health and safety. The Court explained that its earlier cases, including Foucha, have not required States to adopt any particular nomenclature in drafting civil commitment statutes. It noted that legal definitions of words such as "insanity" and "competency" often vary from their

psychiatric counterparts. "We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" Hendricks, 117 S.Ct. at 2080. The Court went on to rule that "Hendricks' diagnosis as a pedophile, which qualifies as a 'mental abnormality' under the Act, thus plainly suffices for due process purposes." Hendricks, 117 S.Ct. at 2081.

Additionally, the fact that a mental condition is in remission does not preclude a finding that the person continues to suffer from the condition and is in need of further detention. In State v. Korell (1986), 222 Mont. 112, 116, 720 P.2d 688, 691, this Court suggested that a mental illness in remission remains a mental illness for purposes of further detention at the State Hospital. That view is in accord with the position taken in other jurisdictions. See Mental Hygiene Legal Services v. Rhodes (N.Y. App. Div. 1994), 606 N.Y.S.2d 834; Bahrenfus v. PSRB (Or. Ct. App. 1993), 862 P.2d 553; State v. Ross (Mo. Ct. App. 1990), 795 S.W.2d 648. In fact, a finding that a mental condition is in remission supports an inference that it still exists.

> The term remission means the abatement of the symptoms and signs of a disorder or disease. The abatement may be partial or complete. Physicians use the expression remission to denote amelioration, which even if complete for the time being, does not necessarily imply permanent cure; in fact, the term carries the idea that the amelioration of the symptoms is temporary.

Doe v. Harris (D.C.N.Y. 1980), 495 F.Supp. 1161, 1170 n.36, quoting L. Hinsie & R. J. Campbell, Psychiatric Dictionary 641 (Oxford Univ. Press, N.Y. 1960).

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) describes pedophilia as a mental disorder. See Diagnostic Code 302.2, American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Washington, D.C., American Psychiatric Association, 1994. Woods argues that pedophilia is excluded from the definition of mental disease or defect under 46-14-101, MCA, however, because it is manifested only by criminal acts or behaviors. According to the DSM-IV, though, the diagnostic criteria for pedophilia include recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors over a period of six months involving sexual activity with a prepubescent child or children which cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. These diagnostic criteria do not support a conclusion that pedophilia is solely manifested by criminal acts or behaviors, because the diagnostic criteria include manifestations which are not criminal in nature.

In the present case, all of the expert witnesses agreed on the diagnosis of Woods as a pedophile, whether "in remission" or not. It is uncontested that Woods' pedophilia has not been treated because he has refused to participate in treatment. The District Court found that Woods' condition remained unchanged from the time of his placement at the State Hospital. In its conclusions of law, the court further referred to its "[f]inding the Defendant still suffers from a mental disease or defect within the context of 46-14-302, MCA . . . ." We hold that these findings are supported by clear and convincing evidence and are not clearly erroneous.

We next consider whether the State presented clear and convincing evidence of Woods' dangerousness, or, in the words of the applicable subsection of the statute, that he presents a substantial risk or serious threat of serious bodily injury to others. Woods cites Moore's opinion that he does not present a substantial risk or a serious threat of serious bodily injury or death to himself or others. He points out that the District Court did not make a finding concerning Moore's opinion. Referring to the letter in the court's file from his sisters, Woods contends that "[a] single reported incident of inappropriate verbal conduct over the years of conditional releases for home visits does not provide the clear and convincing evidence necessary to sustain a finding of dangerousness."

Casey testified at the second hearing that, "In my opinion, that pedophilia is in remission because of the structure and the restrictions that the environment at the State Hospital impose on him." In other words, Woods has had very little opportunity to reoffend within the confines of the State Hospital or under the watchful eyes of his family while on visits with them. Both Casey and Bowman testified that, in the absence of treatment for pedophilia, which Woods has refused, it is probable that he will reoffend against children if the opportunity arises.

The District Court noted that Woods' pedophilia had never been treated because of his continued denial. The court found:

It was the opinion of the professionals at the previous hearing and now, that given the untreated pedophilia, [and] lack of impulse control; an unconditional release would result in an imminent and substantial risk of re-offending.

The court stated that "[t]he Defendant's refusal of treatment for pedophilia renders him a substantial risk for committing other sexual offenses, particularly to children." Does the risk that Woods will reoffend against children constitute a substantial risk

of an imminent threat of physical injury to others?  While physical injury is not defined in the statutes, it equates in the common parlance to "bodily injury," which, pursuant to 45-2-101(5), MCA, includes physical pain and mental illness or impairment.  Casey wrote in his report to the District Court that Woods poses a risk of "psychological injury to young males."  In her letter addendum to her report to the court, Bowman stated that, untreated for pedophilia, Woods presents "a substantial risk of imminent threat of physical injury or emotional injury to others." We conclude that the court's finding that unconditional release would result in an imminent and substantial risk of reoffending constitutes a finding that Woods presents a substantial risk of an imminent threat of physical injury to others, that this finding is supported by clear and convincing evidence, and that this finding is not clearly erroneous.

In summary, the District Court's findings that Woods has a mental disorder or defect which causes him to present a substantial risk of imminent threat of bodily injury to other persons, particularly young children, are supported by clear and convincing evidence and are not clearly erroneous.  Woods has not established violation of his right to due process.  The court's order denying Woods an unconditional release from the State Hospital is therefore  affirmed.

/S/  J. A.  TURNAGE


We concur:

/S/  JAMES C. NELSON
/S/  W. WILLIAM LEAPHART
/S/  KARLA M. GRAY


Justice Terry N. Trieweiler dissenting.
I dissent from the majority opinion.

In 1974, Paul Woods was acquitted of the charge against him by reason of mental disease or defect and committed to the Montana State Hospital.  Section 46-14-303, MCA,  provides that a committed person may apply to the district court for release, and that if he does so, the procedure to be followed is that which is set forth at  46-14-302, MCA.

Section 46-14-302, MCA, provides that after an application for release is made, the court shall appoint at least one person, who is a psychiatrist or psychologist, to examine the person who applies for release and the committed person has a right to an evaluation by a similarly qualified person of his or her choice.  If the court is

satisfied
from the reports that the applicant no longer suffers from a mental disease or defect that
causes that person to present a substantial risk of bodily injury, the court shall order the
person's discharge.  If it is not so satisfied, it must hold a hearing at which the State has
the burden of proving by clear and convincing evidence
whether the person may safely be discharged or released on the grounds
that the person no longer suffers from a mental disease or defect that causes
the person to present a substantial risk of:
(i)  serious bodily injury or death to the person or others;
(ii)  an imminent threat of physical injury to the person or others; or
(iii)  substantial property damage.

Section 46-14-302(6)(a), MCA.
Woods applied for release on December 22, 1994.  In support of his application, he attached the report from Ardean Moore, the staff psychiatrist at Montana State Hospital at Warm Springs.  The report is dated December 2, 1993.  In the report, she observed that:
Although he uses denial regarding his sexual offenses, he has remained in control of his impulses and has not demonstrated any serious behavioral problems or lapses in judgment and has been able to participate adequately in his treatment plan.

Moore diagnosed "Pedophilia, in Remission" and concluded that:
He does not present a substantial risk or serious threat of serious bodily injury or death to himself or others.  He does not present a substantial risk of substantial property damage.

Recommendations:  Since Mr. Woods is not seriously mentally ill and has not shown dangerousness for some time, he qualifies for consideration for discharge.  At the time of his mental status assessment in October, 1993, he appeared stable and appeared to have reached maximum hospital benefits from a lengthy hospitalization.

The District Court appointed Timothy J. Casey, Ph.D., to evaluate Woods.  He did so and issued a report to the court dated January 18, 1995.  Dr. Casey also diagnosed
pedophilia in remission, but concluded that Woods was not a suitable candidate for release from the hospital because he had no support system within the community. Significantly, however, neither did he make any finding that Woods suffered from a mental disease or defect which caused him to present a substantial risk of harm to himself
or others.
Remission is defined in the 25th Edition of Dorland's Illustrated Medical Dictionary as "a diminution or abatement of the symptoms of a disease; also the period
during which such diminution occurs."  Dorland's Illustrated Medical Dictionary 1343 (25th ed. 1974).
The District Court held a hearing to consider Woods' application for release on February 17, 1995.  The only medical evidence presented was the aforementioned

reports
from Moore and Casey.  In spite of this lack of evidence, the District Court found that:

13.  Woods' mental disorder(s), disease(s) or defect(s) cause him to present a substantial risk of serious bodily injury, or an imminent threat of physical injury to other persons, particularly young children.

For that reason, the District Court denied Woods' application for release from the Montana State Hospital.

Woods appealed the District Court's denial of his application to this Court for the reason that the District Court's critical finding was unsupported by substantial evidence and, therefore, was clearly erroneous.  This Court, after review of the record, apparently agreed. On December 12, 1995, the majority issued an order in which it retained jurisdiction but remanded to the District Court for further proceedings.  In that order, the majority concluded as follows:

We conclude that neither report addresses the fundamental require-ment of  46-14-302, MCA (1993), that the defendant "no longer suffer[s] from a mental disease or defect," and that, accordingly, the District Court was without any factual or legal basis on which to determine whether the requirements of this statute had been met.

. . . .

. . . [N]either professional person has rendered an opinion on the fundamental requirement of the statute at issue--whether Woods suffers from a mental disease or defect in the context of  46-14-302, MCA (1993).  Under such circumstances, we conclude that the District Court was in no position to determine whether the requirements of  46-14-302, MCA (1993), were met.

As pointed out by Woods, the statutory framework for consideration of his application for release does not provide for sequential hearings.  It provides, in 46-14-302, MCA, that he is entitled to a hearing at which the State has the burden of proving that he suffers from a mental disease or defect which makes him dangerous to himself or others.  If the State does not carry its burden, he is entitled to be released.  Section 46-14-302(6)(b), MCA, clearly provides:

A hearing is considered a civil proceeding, and the burden is upon the state to prove by clear and convincing evidence that the person may not be safely discharged or released because the person continues to suffer from a mental disease or defect that causes the person to present a substantial risk of:

(i) serious bodily injury or death to the person or others;

(ii) an imminent threat of physical injury to the person or others; or

(iii) substantial property damage.

(Emphasis added.)

The State had the opportunity to meet its burden on February 17, 1995, but failed to do so.  This Court agreed that the State failed to do so and, accordingly, decided the merits of Woods' appeal by its order dated December 12, 1995.  There is no precedent in a case where the issue is whether the district court's judgment is supported by substantial evidence for concluding that it is not and then simply remanding to the district court while retaining jurisdiction so that the unsuccessful party can take another shot at it.

I agree with the majority that principles of res judicata and law of the case should apply to our decision.  See State v. Smith (1993), 261 Mont. 419, 863 P.2d 1000; State v. Black (1990), 245 Mont. 39, 798 P.2d 530; State v. Van Dyken (1990), 242 Mont. 415, 791 P.2d 1350.  However, I disagree with the majority's determination of what the law of the case is.  I conclude that the law of the case is the majority's decision on December 12, 1995, that the State had not proven by clear and convincing evidence that Woods suffered from a mental disease or defect which made him a danger to himself or others.

Although there is no precedent for the procedure followed by the majority in this case, the real danger is that this case becomes precedent for any party who similarly needs a second shot at proving his or her case in the future.

Just think about it.  Based on this decision, in every appeal where the losing party raises insufficiency of the evidence as the basis for appeal, and where that argument has merit, if this Court does not like the result, the prevailing party should have the opportunity to present additional evidence at a hearing following remand before we make a final decision regarding the merits of the appeal.  No one is guaranteed finality following any trial.  The rules regarding burden of proof are meaningless and there is no end to the possible mischief a result-oriented supreme court could accomplish by this procedure.

Finally,  46-14-302(6)(c), MCA, provides that the court discharge or release the committed person "on conditions that the court determine[s] to be necessary or must be recommitted to the custody of the director of the department of public health and human services."  In other words, if the District Court determined that the State had not proven

by clear and convincing evidence that the committed person presents a substantial risk of serious bodily injury or death to himself or others, but had concerns about his adjustment to society, the District Court could have imposed conditions to the release, requiring that Woods be monitored, treated, or supervised to assure the public that further problems will not occur.

For these reasons, I conclude that the State failed to meet its burden at the original hearing held on February 17, 1995.  The District Court was clearly erroneous when it found otherwise.  The majority erred by remanding this case to the District Court to give the State a second opportunity to prove what it had not proven at the original hearing, and the majority's prior decision that the State had failed to meet its burden of proof is the law of this case.  There is no precedent nor procedural authority for remanding for additional evidence and for entering a contrary decision based on that additional evidence.

I dissent from the majority opinion.

/S/  TERRY N. TRIEWEILER

Justices William E. Hunt, Sr., and Jim Regnier join in the foregoing dissenting opinion.

/S/  JIM REGNIER
/S/  WILLIAM E. HUNT, SR.