No. 00-097

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 4

304 Mont. 56

16 P. 3d 409

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RONALD C. WOOSTER,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

Honorable James E. Purcell, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Brad L. Belke, Butte, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General, Helena, Montana

Robert M. McCarthy, County Attorney; Brad Newman,

Deputy County Attorney, Butte, Montana

Submitted on Briefs: August 31, 2000
Decided: January 18, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Ronald Wooster (Wooster) appeals from the Second Judicial District Court's finding that he suffers from a mental disease or defect and its order denying his petition for release from the Montana State Hospital. We affirm the finding and order of the District Court.

¶2 In 1978, Wooster confessed to the murders of his two-and-a-half-year-old daughter Stacy and his six-year-old daughter Kelly. He was acquitted of the deliberate homicide charges stemming from those deaths when the District Court concluded that Wooster suffered from a mental disease or defect which rendered him incapable of appreciating the criminality of his conduct or conforming it to the requirements of the law. Following acquittal, the District Court remanded Wooster to the permanent custody of the Montana State Hospital (MSH) subject to his right to future hearings regarding his mental condition.

¶3 Wooster petitioned for release in 1994. After taking testimony and reviewing the reports of examining experts, the District Court found that Wooster suffered from the mental disease or defect of "antisocial personality disorder." Concluding that he would pose an unreasonable threat to himself or others if released, the District Court denied Wooster's petition for release. Wooster appealed, claiming that antisocial personality disorder is not a mental disease or defect under the relevant statutory provision, § 46-14-101, MCA. State v. Wooster, 1999 MT 22, ¶ 21, 293 Mont. 195, ¶ 21, 974 P.2d 640, ¶ 21 (Wooster I).

¶4 In *Wooster I*, this Court determined that the definition of "mental disease or defect" was ambiguous and adopted an additional affirmative definition of mental disease or defect. After disposing of all other issues, we remanded for consideration of Wooster's petition under this definition. *Wooster I*, ¶ 44. On remand, the District Court directed Dr. William Stratford, a consulting forensic psychiatrist, and Dr. Susan Sachsenmaier, staff psychologist at MSH, to evaluate Wooster and determine whether he suffered from a mental disease or defect as defined in *Wooster I*. Based on their findings, the District Court concluded that Wooster presently suffers from a mental disease or defect and denied his petition for discharge or release from MSH. Wooster appeals from the District Court's findings and order, raising the following issues:

¶5 1. Did the District Court err when it determined that Wooster suffers from a mental disease or defect?

¶6 2. Did the District Court err by failing to consider alternatives to secure confinement and make specific findings regarding Wooster's treatment?

## DISCUSSION

¶7 We review a District Court's finding of mental disease or defect under the clearly erroneous standard. *Wooster I*, ¶ 33; State v. Woods (1997), 285 Mont. 46, 53, 945 P.2d 918, 922. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

¶8 1. Did the District Court err when it determined that Wooster suffers from a mental disease or defect?

¶9 In *Wooster I*, we held that mental disease or defect means "an affliction with a mental disease or mental condition that is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment, and rehabilitation." *Wooster I*, ¶ 43. This affirmative definition complements but does not alter the negative definition in § 46-14-101, MCA, which excludes from the definition of mental disease or defect any "abnormality manifested only by repeated criminal or other antisocial behavior." *Wooster I*, ¶ 43.

¶10 On remand, the District Court directed Drs. Stratford and Sachsenmaier to determine whether Wooster suffered from a mental disease or defect as defined in *Wooster I*. Each reviewed existing files, conducted a psychological evaluation of Wooster and filed a report with the District Court. Dr. Stratford concluded that Wooster suffers from antisocial personality disorder with borderline and paranoid features. He stated his professional opinion that Wooster continues to suffer from a "serious mental condition manifested by disorders in behavior, feeling, thinking and judgment to the extent that he requires care, treatment and rehabilitation." He strongly recommended against any conditional or unconditional release. Dr. Sachsenmaier concluded that, although he showed little or no behavioral evidence of an active antisocial personality disorder, Wooster retains that diagnosis and meets the criteria for possessing a mental disease or defect under the *Wooster I* standard. Dr. Sachsenmaier's report did not contain any specific recommendation on release or treatment. Based on these conclusions and recommendations, the District Court concluded that Wooster suffers from a mental disease or defect and denied his petition for release.

¶11 Wooster does not dispute Drs. Stratford and Sachsenmaier's conclusions that he suffers from a mental disease or defect under the affirmative definition set out in *Wooster I*. Rather, he continues to assert that his particular mental illness-antisocial personality disorder-is specifically excluded by § 46-14-101, MCA. However, this argument was rejected when this Court considered Wooster's original appeal.

¶12 In *Wooster I*, we concluded that "a person with antisocial personality disorder has a condition that is manifest by much more than 'only . . . repeated criminal or other antisocial behavior' and that this condition is not excluded by § 46-14-101, MCA." *Wooster I*, ¶ 37. Under the doctrine of the law of the case, a prior decision of this Court resolving a particular issue between the same parties in the same case is binding and cannot be relitigated. State v. Woods (1997), 285 Mont. 46, 52, 945 P.2d 918, 921 (citing State v. Black (1990), 245 Mont. 39, 44, 798 P.2d 530, 533).

¶13 The District Court's determination that Wooster suffered from a mental disease or defect was supported by substantial evidence in the form of extensive evaluation and comprehensive reports from Drs. Stratford and Sachsenmaier. Each concluded that Wooster suffered from mental disease or defect as those terms were defined by this Court in *Wooster I*. The District Court appropriately relied on the doctors' conclusions when making its finding. Furthermore, under our holding in *Wooster I*, Wooster's antisocial personality disorder is not excluded by the negative definition of § 46-14-101, MCA. We

conclude, therefore, that the District Court's finding that Wooster continues to suffer from a mental disease or defect was based on substantial credible evidence and was not clearly erroneous.

¶14 Did the District Court err by failing to consider alternatives to secure confinement and make specific findings regarding Wooster's treatment?

¶15 Wooster argues that the District Court failed to consider conditional release as an alternative to secure commitment and failed to make specific findings regarding treatment benefits from continued commitment to the MSH. He points to no statutory authority requiring these findings but claims, instead, that they are required to protect the due process rights of individuals committed under a diagnosis of antisocial personality disorder. Wooster contends that, absent specific findings related to both treatment and supervision alternatives, secure confinement of an individual with antisocial personality disorder is tantamount to punishment for criminal behavior without the process and safeguards normally afforded criminal defendants. Without addressing the due process argument, we note that the record does not support Wooster's claims that the District Court failed to consider these issues or make appropriate findings.

¶16 There is no evidence in the record to support a finding that supervision alternatives such as conditional release are appropriate for Wooster. Prior to his first appeal, the District Court asked Drs. Stratford and Sachsenmaier to propose and prepare a conditional release plan. Despite contributing to the report at the District Court's request, Dr. Stratford did not support Wooster's conditional release. Dr. Sachsenmaier only supported conditional release if and when Wooster completed additional sex offender and chemical dependency treatment.

¶17 In their final reports to the District Court following remand, neither Dr. Stratford nor Dr. Sachsenmaier recommended conditional release. Dr. Stratford expressly disapproved of such a plan, stating:

> While other professionals may evaluate him and may see this differently, I very strongly do not believe that he is ready for any conditional or unconditional discharge off the Warm Springs State Hospital campus. . . . The only thing which might be of benefit and be a little progressive is that I am told the State Hospital is developing a independent living situation on the campus with security and strong levels of supervision. If they finish this, as I am told they will in the next month, Mr.

Wooster may be considered as a potential candidate for a <u>campus only living arrangement</u> with no outside or off hospital working, living or socialization.

Wooster presented the District Court with no evidence to support a finding that he would be suitable for a conditional release. His claim that the District Court failed to consider a lesser level of confinement is not supported by the record.

¶18 To the extent that the District Court did not make a specific finding regarding appropriate supervision alternatives, they are implicit. This Court has adopted the doctrine of implied findings for purposes of reviewing findings of fact. Interstate Brands Corp. v. Cannon (1985), 218 Mont. 380, 384, 708 P.2d 573, 576. That doctrine provides that where "findings are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *Interstate Brands*, 218 Mont. at 384, 708 P.2d at 576. Here, the record clearly supports the finding that continued secure commitment was appropriate.

¶19 Wooster also argues that due process requires the District Court to make a specific finding that Wooster will receive effective treatment. He contends that, without such a finding, continued confinement at MSH is nothing more than punishment for past crimes, imposed under the "clear and convincing evidence" standard of civil commitment rather than the "beyond a reasonable doubt" standard required for a criminal conviction.

¶20 It is unnecessary to address the merits of this argument because there is no factual basis for Wooster's contention that the Court failed to make a relevant finding. The District Court stated in its conclusions of law that:

> The Defendant's mental disease or defect poses an unreasonable and foreseeable risk of danger to himself or others if he is released or discharged from Montana State Hospital at this time. Accordingly, continued commitment of the Defendant is necessary under the circumstances to protect the Defendant and the public and *to provide effective care, treatment and rehabilitation to the Defendant*. [Emphasis added.]

While, the District Court did not set out a specific treatment plan, it did make a finding that the purpose of Wooster's continuing commitment was for treatment, care and rehabilitation.

¶21 Finally, we note that Wooster's due process arguments depend on a false premise: that there exists a direct link between the District Court's finding of mental disease or defect and Wooster's past criminal acts. Wooster's argument assumes that the finding of mental disease or defect was based solely on his diagnosis of antisocial personality disorder and, in turn, that the diagnosis of antisocial personality disorder was based solely on Wooster's past criminal activity. Neither of these assumptions are supported by the record.

¶22 First, the District Court's finding that Wooster suffers from a mental disease or defect was not based strictly on his diagnosis of antisocial personality disorder. Rather, it was based on the conclusion of two mental health experts that Wooster suffers from a "mental condition manifested by disorders in his behavior, thinking or judgment to the extent that he requires care, treatment, rehabilitation and a secure structured environment." While antisocial personality disorder may be the primary condition which, in Wooster's case, gives rise to "disorders in his behaviors, thinking or judgment," the finding of mental disease or defect is also based on Drs. Sachsenmaier and Stratford's conclusions that those disorders are of the type that "require care, treatment and rehabilitation." Both made specific conclusions and recommendations to that effect.

¶23 Second, Wooster's diagnosis of antisocial personality disorder was not based on his history of past criminal activity. Rather, it was based on extensive psychological testing and evaluation. Both Dr. Stratford and Dr. Sachsenmaier thoroughly reviewed Wooster's hospital records, past test results, conducted clinical interviews and administered and evaluated a new battery of psychological tests. The record indicates that their diagnoses were based on the results of their current psychological testing and clinical evaluation, not Wooster's past criminal acts.

¶24 Wooster made no showing that the District Court's findings were not supported by substantial credible evidence. Further, we cannot say that the District Court misapprehended the effect of the evidence, or that a review of the record has left this Court with a definite and firm conviction that a mistake has been committed. Therefore, we must conclude that the District Court's findings were not clearly erroneous.

¶25 We affirm the District Court's order denying Wooster's petition for release.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER