FILED

11/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0305

DA 25-0305

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 261N

IN RE THE PARENTING OF L.M.A.R.
and N.R.R.,

JESSE B. REHBEIN,

      Petitioner and Appellant,

  and

DANIELLE C. BUCK,

      Respondent and Appellant,

ANNETTE REHBEIN and DOUG REHBEIN,

      Intervenors, Third-Party Parents,
      and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
               In and For the County of Flathead, Cause No. DR-18-281
               Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

        Jesse B. Rehbein, Danielle C. Buck, Self-Represented, Kalispell, Montana

        For Appellees:

        Emily von Jentzen, Kaufman Vidal Hileman Ellingson PC, Kalispell, Montana

                          Submitted on Briefs:  October 1, 2025

                                  Decided:  November 12, 2025

Filed:

                    _____
                              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jesse B. Rehbein ("Rehbein") and Danielle C. Buck ("Buck") (collectively, "the Parents") appeal from the April 2, 2025 Findings of Fact, Conclusions of Law, and Order of the Eleventh Judicial District Court, Flathead County, adopting the second amended parenting plan proposed by Annette and Doug Rehbein (collectively, "the Grandparents").[1]

¶3 We affirm.

¶4 Many of the relevant facts were previously discussed in *In re L.M.A.R. & N.R.R.*, 2024 MT 148, 417 Mont. 212, 552 P.3d 678. Rehbein and Buck are the natural parents of L.M.A.R. and N.R.R (collectively, "the Children"). *In re L.M.A.R.*, ¶ 3. In 2018, the Department of Child and Family Services ("the Department") removed the children due to several concerns, including Parents' failure to address N.R.R.'s dental needs, N.R.R.'s lack of education, L.M.A.R.'s testing positive for methamphetamines and THC, L.M.A.R.

---

[1] The Parents made some filings jointly and some filings independently. We already observed "that both [Parents] have filed their pleadings jointly throughout this appeal with the parties' names and signatures on each document" and instructed the Parents that they "may continue to file jointly and not separately[.]" *In re Parenting of L.M.A.R. & N.R.R.* ("*In re L.M.A.R. II*"), No. DA 25-0305, Order (Mont. June 17, 2025). Buck never filed her own briefs in this matter. Thus, we only address the arguments raised by the Parents in the briefs submitted prior to the submission of this case on briefs. *In re L.M.A.R. II*, No. DA 25-0305, Order (Mont. Oct 1, 2025).

being behind on wellness appointments, the Parents' history of domestic violence and substance abuse, and the Parents' "lack of motivation and parenting skills to care for the [C]hildren." *In re L.M.A.R.*, ¶ 3. The Department placed the Children with the Grandparents in March 2018. *In re L.M.A.R.*, ¶ 4. Rehbein and the Department agreed that Rehbein would start therapy, facilitate N.R.R.'s participation in therapy, undergo drug testing, take parenting classes, and address the medical, dental, and education needs of the Children. *In re L.M.A.R.*, ¶ 4. Buck maintained some contact with the Children but refused to wear a drug patch or undergo treatment. *In re L.M.A.R.*, ¶ 4.

¶5 In October 2018, the Grandparents petitioned for guardianship of the Children and Rehbein voluntarily signed the consent documents agreeing to the guardianship. *In re L.M.A.R.*, ¶ 4. The Grandparents were appointed as guardians in February 2019. *In re L.M.A.R.*, ¶ 4. As guardians, the Grandparents allowed supervised visits between the Children and the Parents, though these visits were limited while Rehbein was incarcerated on unrelated offenses from April until December 2019. *In re L.M.A.R.*, ¶ 5. When released, Rehbein reunited with Buck and helped her achieve sobriety; visitation increased gradually to include unsupervised overnight visits on weekends. *In re L.M.A.R.*, ¶ 5.

¶6 In April 2022, the Parents moved to terminate the guardianship. The Grandparents petitioned to intervene and requested the court grant them a third-party parental interest. *In re L.M.A.R.*, ¶ 6. Both parties stipulated to the appointment of a Guardian ad Litem ("GAL"), who, upon completion of her investigation, delivered a report to the court recommending the Grandparents be granted a parental interest, the Children continue residing with the Grandparents, and that supervised visitation with the Parents continue.

*In re L.M.A.R.*, ¶ 6. This Court affirmed the District Court's grant of a third-party parental interest to the Grandparents. *In re L.M.A.R.*, ¶ 20. The District Court's parenting plan required the Parents remain sober from illicit drugs, not abuse alcohol or marijuana, continue engaging in counseling, and ameliorate other safety concerns for the Children in order to have unsupervised parenting time.

¶7 In the instant case, the Grandparents filed an Emergency Ex Parte Motion for Interim Relief, Requesting Reappointment of the GAL and Amendment of Parenting Plan to Suspend Visitation Pending GAL Investigation in the District Court on February 25, 2025, due to safety concerns shared by the Children with their therapists and because the Parents had ceased engaging with counseling. The court issued an order suspending contact between the Parents and Children the same day. On March 17, 2025, the District Court held a contested hearing with both parties present. The Parents testified, as did the Children's therapists. The court also conducted an in-chambers interview of N.R.R.

¶8 A therapist who has treated L.M.A.R. since June 2022 testified about the necessity of supervised visits between L.M.A.R. and the Parents. The therapist noted a resistance by L.M.A.R. to attending therapy "not present before [L.M.A.R.] began spending more time with [the Parents]." The therapist suggested it would be helpful for "a neutral third-party supervisor to provide some objectivity." L.M.A.R. shared safety concerns with her therapist, specifically that Buck had punched holes in the walls during a visit because Buck believed there were mice in the walls. The therapist diagnosed L.M.A.R. with Generalized Anxiety Disorder.

¶9    The court heard testimony from N.R.R.'s therapist, who diagnosed N.R.R. with chronic Post-Traumatic Stress Disorder ("PTSD"). Early in her treatment in June 2022, when discussing her parents, N.R.R. would dissociate, curl up in a fetal position, and hum to herself. N.R.R. reverted to this behavior after she began to spend weekends with her Parents. N.R.R. would dig at her face during counseling sessions following these weekends. The court found the Parents "have not been interested in supporting [N.R.R.'s] counseling until right before the court hearing" and "appear to have been actively interfering by telling [N.R.R.] she is not allowed to talk about them in counseling[.]" N.R.R. instructed her therapist not to tell Buck about the content of the counseling sessions because N.R.R. was "very nervous" that Buck was asking questions about what she had disclosed in those sessions. N.R.R. preferred her therapist provide information about her sessions only to the Grandparents. The court noted the therapist "further opined that [N.R.R.] is attempting to make [the Parents] look good because she has been promised no chores, unlimited electronic time, and [a] new skateboard if she comes to live with them." On February 19, 2025, the therapist, with N.R.R.'s permission, sent a letter to the Grandparents recommending reappointment of a GAL and reinstatement of supervised visits between the Parents and N.R.R. due to disclosures from N.R.R. that she feared for her safety and the safety of L.M.A.R. The therapist maintained the confidentiality of other disclosures at N.R.R.'s request because of N.R.R.'s concern for her safety.

¶10    Both therapists testified the Children appeared much more relaxed and calmer in sessions after the court suspended visitation with the Parents.

¶11 On April 1, 2025, the court conducted an in-chambers interview with N.R.R., over the objection of the Parents. On the day of the scheduled in-chambers interview, N.R.R. became upset by Rehbein's presence in the courthouse parking lot. Rehbein made N.R.R. "nervous." During the interview, N.R.R. did not want to disclose any additional information to the court. However, N.R.R. confirmed previous disclosures as reported by her therapist, including that she distrusted her parents; she feared she would have to hide from her parents in the woods; she feared their response when they talked to the Department; she felt safer at her Grandparents' house; she feared the relationship between her and her Parents could become physically violent again; she had an awareness the Parents were "bribing [her] with nice things after they do something abusive"; and she felt "sick to [her] stomach thinking about going to [the Parents'] for the weekend."

¶12 Despite the court having no physical safety concerns for the Children while in the Parents' home, it found the atmosphere created by the Parents was "not conducive to raising N.R.R., who suffers from PTSD as a result of her prior relationship with them, and L.M.A.R., who suffers from a generalized anxiety disorder for the same reasons." The court noted the anecdote shared by L.M.A.R. about Buck punching the walls as concerning but not constituting current evidence of chemical dependency concerns. Additionally, the court found Rehbein's appearance at the courthouse prior to the interview, which violated the standing order that Rehbein not have in-person contact with the Children, was very distressing to N.R.R. N.R.R. expressed a desire to remain living with the Grandparents, and to have only supervised visits with the Parents. Conversely, L.M.A.R. was too young to have a specific preference. The court also found the Children had a positive relationship

with each other and their Grandparents; appeared "well-adjusted to home, school, and community[;]" and were in "good physical health." The court found the developmental needs of the Children included continuity and stability of care, as well as physical and psychological safety in the home, which the Grandparents provided. The court observed that although the Children were fixated on their safety while in the Parents' care, the Parents had not made any attempts to alleviate those concerns.

¶13 Based on the foregoing, the District Court found there was a change in circumstances which necessitated an amendment to the parenting plan. The court ordered that the Children would remain in the primary residential care of the Grandparents, with supervised visitations every other weekend with the Parents for as much time as could be arranged with the provider. The court also ordered the Parents could have mid-week supervised visits. If the Children chose to participate, the Parents could also have daily telephone or video calls. The court declined to reappoint the GAL, due to the deterioration in the relationship between the GAL and the Parents. However, the court held that should the visit supervisor recommend unsupervised visitation, but the Grandparents disagree with that recommendation, the Parents may move to amend the parenting plan.

¶14 On appeal, the Parents raise a myriad of issues, which we restate as follows: (1) whether the District Court violated § 41-3-205, MCA, and their due process rights by relying on sealed Department records when it granted a third-party parental interest to the Grandparents; (2) whether the court's judgment granting the Grandparents a third-party parental interest is void; (3) whether the court improperly relied on the GAL; (4) whether their due process rights were violated when the court did not respond to certain filings and

7

motions; (5) whether this Court erred by denying their motion to supplement the record; (6) whether the Parents are entitled to en banc review and reassignment of justices on this Court; and, finally, (7) whether the District Court abused its discretion in amending the parenting plan.[2]

¶15    The Parents' first three issues are easily disposed under the doctrine of the law of the case.  A prior decision of this Court resolving a particular issue between the same parties in the same case is binding and cannot be relitigated.  *State v. Wooster*, 2001 MT 4, ¶ 12, 304 Mont. 56, 16 P.3d 409.  Here, this Court has previously considered the first three issues in the Parents' previous appeal of the judgment granting a third-party parental interest to the Grandparents and affirmed.  *In re L.M.A.R.*, ¶¶ 16, 20; *see also Rehbein v. Eleventh Jud. Dist. Ct.*, No. OP 25-0170, Order (Mont. Mar. 18, 2025) (Order denying Parents' petition for supervisory control of the instant case because "[the Parents] have appealed the District Court's decision.  Their voices have been heard, and it is evident they do not agree with the appeal's outcome.  This Court declines to review this case again[.]").  We will not now entertain the Parents' attack on that judgment in this appeal.

¶16    The Parents argue that the District Court violated their due process rights when it "abandoned its duty to provide a neutral, accessible forum" and when the court did not respond to various motions and objections lodged by the Parents.  However, "[t]he court is not required to state findings or conclusions when ruling on a motion unless these rules

---

[2] The Grandparents, in their response brief, ask this Court to designate the Parents vexatious litigants pursuant to M. R. App. P. 19(5), a designation unsuccessfully requested in the proceedings below.  We likewise decline to declare the Parents vexatious litigants at this juncture.

provide otherwise." M. R. Civ. P. 52. The rules do not otherwise require the court to respond to the motions and filings at issue here. The Parents do not provide any relevant or supporting authority for their due process claim. As we have repeatedly said, "we are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position." *Estate of Harris v. Reilly*, 2025 MT 126, ¶ 16, 422 Mont. 383, 570 P.3d 552 (quotation omitted). This Court will not consider unsupported issues or arguments. *Penado v. Hunter*, 2024 MT 216, ¶ 20, 418 Mont. 167, 557 P.3d 434 (quotation omitted).

¶17 The Parents argue the Attorney General's declining to address purported constitutional issues in their appeal further prejudiced their due process rights and allowed this Court to "usurp[] executive authority" of the Attorney General in violation of separation of powers principles. Because we do not reach any constitutional issues in deciding the instant case, we do not address these arguments.

¶18 We have already addressed the Parent's request to supplement the record, both as an initial matter and on their motion for reconsideration. *In re L.M.A.R. II*, No. DA 25-0305, Order (Mont. June 17, 2025) (Order denying motion to supplement the record); *In re L.M.A.R. II*, No. DA 25-0305, Order (Mont. July 15, 2025) (denying motion for reconsideration of order denying supplementation). We decline to do so again here.

¶19 As for the Parents' request for en banc review and reassignment of justices, we likewise find this without merit. The Parents provide no authority in support of their request for en banc review, and we decline to construct an argument for them now. The authorities the Parents cite in support of their argument for reassignment are inapposite to

9

the facts and posture of the instant case. Moreover, no authority supports the Parents' argument that they are entitled to a panel of justices who have not heard *In re L.M.A.R.* or ruled on motions in the present appeal. *Penado*, ¶ 20; *Estate of Harris*, ¶ 16.

¶20 The remaining issue raised on appeal is whether the District Court abused its discretion amending the parenting plan.

¶21 "District courts have broad discretion to make and modify parenting plans under the applicable standards of §§ 40-4-212, -219, and -220, MCA, and this Court reviews parenting plan determinations and modifications for a clear abuse of discretion." *In re F.L.F.L.K.*, 2025 MT 41, ¶ 11, 421 Mont. 1, 564 P.3d 844 (citing *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894). An abuse of discretion occurs if it is based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise is arbitrary, without conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re Bessette*, ¶ 13. A finding of fact is clearly erroneous if not supported by substantial evidence, the court misapprehended the effect of the evidence, or there is a definite and firm conviction that the lower court was mistaken following review of the record. *In re Bessette*, ¶ 13.

¶22 In its discretion, a district court may modify a previously imposed parenting plan only upon finding that (1) a change in the circumstances of the child exists based on facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, and (2) amendment or modification is necessary to serve the best interest of the child based on consideration of the relevant criteria specified in §§ 40-4-212 and -219(1), MCA. *In re Bessette*, ¶ 16 (citing § 40-4-219(1), MCA).

¶23 Here, the Children experienced a change in circumstances due to facts which had arisen since the prior plan was instituted. Under the prior parenting plan, the Parents were required to attend therapy. The present proceedings began when the Parents ceased compliance with this requirement. Further, the Parents' unsupervised time was conditioned on ameliorating certain safety concerns. Based upon the testimony of the Children's therapists, as well as the court's in-chambers interview with N.R.R., concerns regarding the Children's safety when spending unsupervised time with the Parents had developed and were substantial. This is supported by the evidence that when Rehbein appeared at the courthouse on the day of the in-chambers interview, in violation of the court's order, N.R.R. became very anxious and fearful. The District Court did not err in finding there was a change of circumstances.

¶24 Having determined that the circumstances underlying the parenting plan had changed, we consider whether amending the parenting plan was in the Children's best interest. Section 40-4-212, MCA, mandates the court determine the parenting plan in accordance with the best interests of the Children. "The court shall consider all relevant parenting factors[.]" Section 40-4-212(1), MCA.

¶25 Here, the District Court made the requisite findings under § 40-4-212, MCA, that amending the parenting plan was in the best interests of the Children. Notably, the Parents do not challenge these findings. Instead, they assert the court erroneously relied on sealed Department records. This argument fails because no such records are referenced in the order appealed. The Parents provide that a letter stating that the Department's investigation into a recent report was closed as unsubstantiated, which was conducted after the current

11

proceedings began, is evidence in their favor. No information concerning the substance of that report was provided. Otherwise, the Parents presented no evidence rebutting the testimony or challenging the credibility of the Children's therapists, who, contrary to the Parents' argument now on appeal, had no obligation to be neutral. The therapists' role was to assist their clients—the Children—and, to that end, they raised safety concerns because of information disclosed during therapy. These concerns were reinforced by N.R.R.'s in-chambers interview. The District Court was in the best position to evaluate the best interests of the child. *In re Z.N.-M.*, ¶ 40, 2023 MT 202, 413 Mont. 502, 538 P.3d 21. It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *In re G.M.N.*, 2019 MT 18, ¶ 11, 394 Mont. 112, 433 P.3d 715 (citation omitted). The District Court's factual findings were not clearly erroneous. The District Court properly considered the best interests of the Children in amending the parenting plan.

¶26 Having reviewed the record, we conclude the District Court did not abuse its discretion in amending the parenting plan. A change in circumstance existed due to the Parents' noncompliance with the existing parenting plan and the amendment of the parenting plan was in the best interests of the Children. The other issues raised by the Parents here are similarly unsuccessful. Accordingly, the District Court is affirmed.

¶27 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE