## PHILLIPS PETROLEUM CO. v. RENEGAR et al.

No. 24896. March 20, 1934.

R. G. McKinney and E. L. Routh, for petitioner.

J. Berry King, Atty. Gen., Robert D. Crowe, Ass't Atty. Gen., Conrad C. Mount, and Owen F. Renegar, for respondents.

CULLISON, V. C. J. This is an original proceeding before this court by Phillips Petroleum Company, a corporation, petitioner herein, to review an order and award of the State Industrial Commission made and entered on July 1, 1933, in favor of the claimant, Chas. Z. Renegar.

Said order and award appears in its material parts as follows:

"(1) That the claimant herein, on and prior to July 15, 1932, was in the employment of the respondent and engaged in a hazardous occupation covered by and subject to the provisions of the Workmen's Compensation Law;

"(2) Arising out of and in the course of the said employment the claimant, on the 15th day of July, 1932, sustained an accidental personal injury in the nature of sunstroke when he walked for several miles through the underbrush, cornfields, carrying approximately 25 or 30 pounds of tools and appliances, and climbing a telephone pole and doing some repair work which necessitated the exercise of great strength and exertion, the said telephone being in a canyon or gulch or branch, surrounded on three sides by timber and there was none or little breeze and the sun was shining with great heat and intensity and the claimant, after exerting undue strength, vitality, and vigor in said work, succumbed to the said heat and became unconscious for a period of time, and that the claimant quit work immediately and returned to work in a few days at very light work or practically no work at all and worked intermittently up to and including August 26, 1932, when he was discharged, but that from and after the said accidental injury, the claimant has been temporarily totaly disabled from the performance of manual labor from the date of said accident to the present time, and is still temporarily totally disabled, but inasmuch as the claimant was kept on the pay roll to August 26, 1932, and was paid salary for a half month in September, 1932, his compensation should start September 16, 1932, allowing the five days' waiting period from August 26, 1932, to September 1, 1932, and the payment of a half month's salary for the month of September, 1932;

"(3) That the average monthly wage of the claimant at the date of said injury was $153.15, thus fixing his compensation rate the sum of $18 per week.

"The Commission is of the opinion: Upon a consideration of the foregoing facts that the claimant is entitled to compensation at the rate of $18 per week from September 16, 1932, to this date, or the sum of $744, and to continue to pay the claimant at the rate of $18 per week until the temporary total condition ceases, or until the further order of this Commission, and to furnish the claimant such further med-

ical care and attention as is reasonable and necessary. * * *"

—and the Commission so ordered.

Petitioner seeks a reversal of the foregoing award upon four propositions, the first of which is:

"That in order for injuries sustained from sunstroke to be compensable under the Workmen's Compensation Act, it is necessary for the claimant to show that he was subjected to a greater hazard and likelihood of being overcome by heat or sunstroke, and that such greater hazard was occasioned by the place of the employee's work by reason of its location, nature, and climatic condition; and it must be shown that the claimant suffered a greater hazard by reason of the nature or place of his employment than the general public, or others in the same locality, would be subjected to."

The record discloses the following testimony: Claimant testified that on July 15, 1932, he walked five or six miles through cornfields located in second bottom land, attempting to find the trouble on one of petitioner's telephone lines. That he was carrying 28½ pounds of equipment, and it was "awful hot" in the cornfield, which was "way out in roasting ears." Upon locating the broken wire he went to the pole to which the broken wire should be fastened, arriving there at about 3:30 p. m. This pole was in a hole on the side of a ravine and the top of the pole was about four or five feet above the top of the ravine, and there was timber from 20 to 40 feet high on the north, south and east of the pole, and a cornfield on the west, the cornfield being about 40 feet from the pole. Claimant further testified that the timber was probably 20 feet from the pole and afforded no shade, and that the sun was shining right into the hole in which the pole was located, and claimant could not get any breeze. The temperature was from 105 to 110 degrees at the telephone pole and the pole in which he was required to work was creosoted and so hot that the creosote was running out of it. Claimant worked on the pole, despite the cramping occurring in his right arm, for some 30 minutes, exerting every bit of strength he had to lift the wire into the brackets, and testified that in his 25 or 26 years working in the telephone business he had never before been placed in such a strain. Upon descending the pole, after restoring service on petitioner's telephone line, claimant became unconscious and remained so for a period of from 1½ to 2 hours; the last thing he remembered was cramping all over.

Dr. W. C. Mitchener testified that he did not know whether the thermometer reading on top of the pole, located as this one was, was greater or less than the thermometer reading on the ground, but that unquestionably claimant suffered a greater hazard of being overcome by heat than a passerby due to the great effort claimant had to exert in a strained position, plus the fact that he was shut off from all breeze. Claimant testified there was no question about its being hotter on top the pole. Dr. Mitchener further testified that the cause of claimant's present condition is that claimant got too hot.

Dr. Fred S. Watson, petitioner's doctor in Okmulgee, testified that from the history and examination there was no doubt in his mind but that claimant suffered a heat exhaustion.

Claimant testified that he drew wages until August 26, 1932, although actually working only one day after the accident.

Dr. Mitchener testified regarding claimant's temporary total disability to the effect that claimant cannot do manual labor at this time, being just about able to get around with the use of a cane or crutches. Claimant testified that he has not been able to work since the injury, except as described, supra, and is not able to walk, much less work, at this time. That he spends two-thirds or three-fourths of his time in bed. That this (the hearing had on June 26, 1933) is the fifth or sixth time since April 12 (1933) that claimant has had his clothes on.

We are of the opinion, after carefully reviewing the entire testimony and considering the same as a whole, that the testimony shows a clear causal connection between the conditions under which claimant was working and the resulting injury. Further, that the location, nature, and climatic condition of the place of the claimant's work were such as would likely expose him to the danger of heat exhaustion, overheating or heat exertion, and his exposure to same, resulting in injury, was a risk naturally connected with and incidental to his employment as distinguished from the ordinary risk to which the general public is exposed from climatic conditions.

Claimant having fully sustained his claim for compensation as to sunstroke, and the Commission having so found, we deem it unnecessary to consider petitioner's second and third propositions, which attack the sufficiency of the evidence on this point.

The fourth and last proposition advanced by petitioner is that:

"An injury caused by continuous strain due to the nature of the work and which develops gradually with no element of accident, is not an accidental injury, but is an occupational disease."

The record discloses that in the fall of 1930, when petitioner merged with the Independent Oil & Gas Company, the company for which claimant was working at that time, petitioner required that all employees of the Independent Oil & Gas Company be examined before it would take them over. On this examination claimant was found to be in "first class condition." Claimant testified he was in good health on July 15, 1932, which was the date of the injury. Dr. Mitchener testified that he had been claimant's family physician and had known claimant for 15 years, and that claimant had been doing hard work ever since he had known him and was an able-bodied man prior to the accident. Claimant testified that while working on the pole he began to cramp, which he attributed to the strain, and stated that he never had experienced that before in working.

This court has held that an "accident," as contemplated by the Workmen's Compensation Law (Comp. Stat. 1921, sec. 7282, et seq., as amended) is distinguished from an occupational disease, in that it arises by some definite event, the date of which can be fixed with certainty, but which cannot be fixed in the case of occupational diseases. Vaughn & Rush et al. v. Stump et al., 156 Okla. 125, 9 P. (2d) 764.

In Brown v. English, 159 Okla. 208, 15 P. (2d) 17, this court quoted with approval from Bryant v. Beason, 153 Okla. 57, 4 P. (2d) 1061, as follows:

"Where, in a proceeding to review an award of the State Industrial Commission, the record discloses a conflict as to whether the disability of the employee is due to an occupational disease or to an accidental injury, the finding of the Commission of accidental injury will not be disturbed."

To the same effect see Haynes Bros. Drilling Co. v. Dungan, 158 Okla. 263, 13 P. (2d) 197.

In the instant case petitioner produced no evidence that the claimant was suffering from an occupational disease, nor does it attempt to name the alleged occupational disease.

The record contains competent evidence reasonably tending to support the finding of the Commission that claimant sustained an accidental personal injury, and under the uniform holding of this court an award based thereon will not be disturbed upon review.

The award is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.