CITY OF MUSKOGEE et al. v. BEBEE et al.

No. 31138. Oct. 19, 1943.

Rehearing Denied Nov. 9, 1943.

Application for Leave to File Second Petition for Rehearing Denied Nov. 23, 1943.

*142 P. 2d 859.*

Mont F. Powell and L. B. Moore, both of Oklahoma City, for petitioners.

Kelly Brown and Chester Norman, both of Muskogee, and Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, J. This is an original proceeding instituted in this court to obtain a review of an order of the State Industrial Commission awarding compensation under the Workmen's Compensation Law for temporary total disability resulting from an injury sustained by the respondent Floyd Bebee (hereinafter referred to as the claimant) while working for the petitioner, city of Muskogee (hereinafter referred to as the employer or city).

On the 7th day of January, 1942, the claimant's right foot was frozen, ultimately resulting in the amputation of his right leg just below the knee. The claimant was working for the city at the time. In fact, he had been in its employment for approximately eight years prior to the injury.

He was employed by the city to work in its street department. In general, his duties as such employee were identified with the repair and maintenance of the streets of the city of Muskogee. In the performance of these duties he drove a

truck and assisted in loading and unloading the same.

The nature of the services performed by him were such that under our Workmen's Compensation Law as, interpreted and applied he was entitled to compensation for accidental injuries received in the course of his employment. Generally, his services were identified with the "improvement or alteration or repair of . . . streets" (85 O. S. 1941 § 3, subs. 14), and therefore constituted "construction work" within the meaning of that term as used in 85 O. S. 1941 § 2, enumerating the classes of employment falling within the act. Oklahoma City v. State Industrial Commission, 147 Okla. 261, 147 Okla. 303, 298 P. 577. Notice, also, holdings and discussions appearing in Board of County Commissioners of Marshall County v. Lacy, 161 Okla. 138, 17 P. 2d 398; Board of County Commissioners of Tulsa County v. Bilby, 174 Okla. 199, 50 P. 2d 398.

The city urges, however, that at the particular time of claimant's injuries he had departed from the usual character of his employment and was performing work exclusively connected with the sanitary department of the city government; that he was disposing of "trash" which had been accumulated from the streets of the city of Muskogee in exercise of its function to preserve healthful conditions within the city as distinguished from the maintenance and repair of its streets for, the use of the traveling public. If this is true, claimant was at the time of his injury engaged in a governmental function of the city government (Spaur v. City of Pawhuska, 172 Okla. 285, 43 P. 2d 408); and the work being performed by him was such as to be nonhazardous, and therefore noncompensable under the Workmen's Compensation Law. City of Muskogee v. State Industrial Commission, 150 Okla. 94, 300 P. 627.

The question, then, to be determined is whether the claimant was at the time of his injury engaged in hauling trash which had accumulated as a result of cleaning the street as an incident to the protection of the public health or was engaged in disposing of accumulations derived from "picking up" or removing obstacles as an incident to keeping the streets in a proper condition for use by the traveling public.

An examination of the record presented reflects that the city places considerable reliance on language used by witnesses in testifying from which it seeks to draw inferences unfavorable to claimant.

As previously stated, claimant was previously engaged as an employee of the street department. He worked under one Earl Brewer, who held the position of "street supervisor." Claimant was equipped with a motor-driven truck which he drove. He was assisted by a helper named W. P. Peachey.

On the day in question, claimant, together with his helper, first loaded and hauled several loads of dirt for use on the streets, spending the major portion of the day in that particular type of work. In so doing he was engaged in general street repair and maintenance work. In the latter part of the day the two men loaded their truck with debris which had accumulated near the "city barn" and took the same to the "dump heap" outside the city. It was during this trip that claimant's foot was frozen.

At one place in the record this debris is referred to as "trash," at another as "street sweepings," at another as "material," and at still another as things or material which had been "picked up on the streets and piled up there."

Careful inquiry was not made as to the nature and source of the debris. It could have been accumulated obstacles picked up in connection with the maintenance or repair of the streets, or it may, as the city and its insurance carrier urge, have consisted exclusively of trash accumulated in keeping the streets clean as a health measure. Upon the latter conjecture, we are asked to assume and hold as a matter of fact that claimant departed from his normal and regular line of employment and engaged

in the performance of duties exclusively identified with the maintenance of sanitary conditions within the city. We decline to indulge in such an assumption and to attribute such significance to terms which were used by lay witnesses without regard to the peculiar legal significance which is now sought to be attached thereto. Our refusal to indulge in this conjecture renders the rule of nonliability established in City of Muskogee v. State Industrial Commission, supra, inapplicable to the case at bar. Under the evidence in this case it would be improper for us to disturb the finding of the State Industrial Commission to the effect that claimant was engaged in a hazardous employment covered by the Workmen's Compensation Law.

The city and its insurance carrier next contend that plaintiff's injury is nonaccidental and therefore noncompensable. They invoke the rule applied by this court in Black-Sivalls & Bryson v. Silvey, 184 Okla. 176, 86 P. 2d 327, wherein we held that exposure to cold and the injury created therefrom did not constitute an accidental injury. The theory upon which the holding was based was treated only by reference to prior decisions, among which was Wilson & Co. v. McGee, 163 Okla. 99, 21 P. 2d 25, another case specially mentioned by the city and insurance carrier involving disability created by exposure to cold and wherein compensation was denied. The exposure involved in the case last cited was occupational in character as distinguished from exposure to weather. Claimant worked in a "freezer" for stored meats.

Petitioners also call our attention to a number of cases from other jurisdictions. We do not deem analysis of those decisions appropriate here since for the purposes of this case the applicable rule with reference to compensation for exposure to weather conditions, as well as the exceptions thereto and qualifications thereof, is sufficiently clarified by our own prior decisions.

Perhaps the better expressions of the rule with reference to exposure to severe weather conditions and the liability which may arise under the Workmen's Compensation Law are found in connection with sunstroke cases. In the case of Nims & Frost et al. v. Abner et al., 188 Okla. 356, 109 P. 237, we stated the conditions under which injuries attributable to sunstroke are compensable in the syllabus. We therein said:

"If the place of the employee's work, by reason of its location and nature, would likely expose him to the danger of sunstroke, or if the risk of injury by sunstroke is naturally connected with and reasonably incident to his employment, as distinguished from the ordinary risk to which the general public is exposed from climatic conditions, the master will be liable for the consequential injuries. Skelly Oil Co. et al. v. State Industrial Commission, 91 Okla. 194, 216 P. 933."

See, also, Gulf Oil Corporation v. Garrison, 183 Okla. 631, 84 P. 2d 12; Phillips Petroleum Co. v. Renegar, 167 Okla. 496, 30 P. 2d 922; notice, also, 71 C. J. 626.

In Gulf Oil Corporation v. Garrison, supra, we said:

" . . . The petitioner urges that the respondent was injured, if at all, as the result of a common hazard and not as an incident to his employment and that therefore the cases just cited are controlling here. We do not agree with this contention but rather are of the opinion that the evidence shows that respondent was exposed to the effect of the sun's rays under conditions and in surroundings which intensified their effect upon him and rendered him more susceptible to the danger of heatstroke or sunstroke than others, even his coworkers, in that his work was upon the derrick floor in the proximity of metal and oil which tended to concentrate the heat of the sun upon and around him and that while so working he succumbed suddenly to its overwhelming effect. The injury, therefore, was an accidental one within the meaning of that term as defined in the above-cited cases and since it resulted from a risk reasonably incident to the employment it arose out of the employment. . . ."

There is no rational distinction in law between injuries sustained by reason of

314

exposure to extreme heat and those caused by exposure to extreme cold. Thus by a mere substitution of the word "freezing" for the word "sunstroke" in the rule above quoted from Nims & Frost v. Abner, supra, we have the applicable principle applied by the State Industrial Commission in awarding compensation in this case. Do the facts here justify the application made?

The record reflects that the day of injury was extremely cold; that the claimant was driving a truck from which the matting over the floorboards had been removed; that there were cracks in the floor which allowed the cold air to circulate around claimant's feet while driving; that the "foot feed" which claimant operated with his right foot was constructed of metal and was without a protective pad or covering. Under these conditions plaintiff was exposed to the effect of the extreme cold under conditions and in surroundings which intensified their effect upon him and rendered him more susceptible to the danger of freezing than others, even his coworkers, in that his work as such driver placed his right foot in a position of comparative inactivity at a point where it was exposed to cold air circulating between the uncovered floorboards of the car.

Under the circumstances of the case, we are of the opinion, and hold, that the order and award of the State Industrial Commission was justified by the evidence. The order is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, WELCH, HURST, and ARNOLD, JJ., concur. BAYLESS, J., absent.