# FILED

May 13 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0254

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 165

IN THE MATTER OF the Application for Transfer of
Location for Montana All-Alcoholic Beverages Resort
License No. 07-999-2667-009, THE MOUNTAIN MONKEY,
3842 Winter Lane, Whitefish, Flathead County, Montana

APPLICANT:  The Stube & Chuckwagon Grill, LLC -
Rande Hall, Sole Member (Cause No. 06-116-LQ),

   Petitioner and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
      In and For the County of Flathead, Cause No. DV 2006-594A
      Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Michael A. Ferrington, Attorney at Law, Whitefish, Montana

   For Appellee:

     Derek R. Bell, Special Assistant Attorney General, Helena, Montana

       Submitted on Briefs:  January 29, 2008

          Decided:  May 13, 2008

Filed:

       _____
            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Rande Hall (Hall), the owner and sole member of the Stube & Chuckwagon Grill, LLC, appeals an order of the Eleventh Judicial District, Flathead County, affirming Findings of Fact, Conclusions of Law, and Order (Final Decision) as well as Supplementary Findings of Fact and Discussion (Supplemental Findings) issued by the Department of Revenue of the State of Montana (DOR). In its Final Decision and Supplemental Findings a DOR hearing examiner denied a request by Hall to transfer a resort all-beverages license owned by him in conjunction with the Stube & Chuckwagon Grill, LLC, to a new business at a different location to be known as the Mountain Monkey. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    In April 1998, resort all-beverages License No. 07-999-2667-009 (License) was transferred to Hall to be used in conjunction with an establishment he owned known as the Bierstube, located in the Big Mountain Ski Resort (BMSR), 3896 Big Mountain Road, Whitefish, Montana. In July 2000, Hall changed the name of the Bierstube to the Stube & Chuckwagon Grill, LLC (Chuckwagon Grill).

¶3    Sometime in 2003, Hall applied to the DOR to transfer the License from the Chuckwagon Grill to the proposed location of the Mountain Monkey at 3842 Winter Lane, Whitefish, Montana, in a complex known as the Kristianna Condominiums. The Kristianna Condominiums are located on Lot 24 of the Big Mountain View Subdivision, as that subdivision is recorded in Flathead County. Hall entered into an agreement to lease the facility from its owner, Wayne Womack (Womack). When Hall applied for the

2

transfer of the License, Winter Sports, Inc. (WSI), the corporate entity which owns BMSR, lodged an official protest of the transfer through its attorney Joseph Mazurek (Mazurek).

¶4     Under § 16-4-202(11), MCA, "a resort retail all-beverages license may not be sold or transferred for operation at a location outside of the boundaries of the resort area." WSI protested, claiming that the proposed site of the Mountain Monkey in the Big Mountain View Subdivision was not within the boundaries of the BMSR area; thus, the License could not be transferred.  In conjunction with its protest letter, WSI submitted several documents which it claimed supported its position.  One was a plat of BMSR approved by DOR in 1993.  This plat indicates the exterior boundaries of the BMSR area with a bold black line.  Within this exterior boundary are seven parcels of property which are shaded.  On the right side of the plat are legal descriptions of these shaded parcels, which state that they are "excepted" from the BMSR area.  One of these shaded parcels is described as the Big Mountain View Subdivision.  In other words, although located within the exterior boundaries of BMSR, the Big Mountain View Subdivision is reflected on the plat as being outside of the BMSR area.  Thus, the Kristianna Condominiums located in Lot 24 of this subdivision, are outside of the BMSR area as well.  In response to this protest letter, Hall withdrew the transfer application pending further investigation.

¶5     On April 13, 2004, in a wholly separate proceeding, another entity called Big Mountain Club Refreshments, LLC, filed an application with the DOR for a combined alcoholic beverage/gambling operator license at a proposed establishment to be known as the Big Mountain Club, located at 3893 Big Mountain Road, Commercial Unit 4A, in the

Morning Eagle Building. Big Mountain Club Refreshments, LLC, received protest letters from several individuals, including Hall and Womack. A hearing on the matter was held on October 21, 2004, with Howard R. Heffelfinger, hearing examiner for DOR, presiding. At the hearing, Womack protested the issuance of the license to WSI in part on the grounds that the proposed site of the Big Mountain Club in the Morning Eagle Building was outside the BMSR area. Heffelfinger rejected Womack's protest and recommended that the application be approved in a decision issued on November 29, 2004, entitled "In the Matter of the Protests to the Issuance of One Original (new) Montana All-Alcoholic Resort License, Big Mountain Club, 3893 Big Mountain Road, Whitefish, Flathead County, Montana, No. 04-044-LQ" (Big Mountain Club Decision).

¶6 After the Big Mountain Club license was approved on July 7, 2005, Hall submitted another application to transfer his License to the Mountain Monkey. In his briefs before this Court, Hall claims that two facts which arose in conjunction with the application for the Big Mountain Club prompted him to re-file his application. First, Heffelfinger had approved the license for the Big Mountain Club in the Morning Eagle Building, which was located in one of the shaded portions of BMSR plat, just like the proposed site of the Mountain Monkey in Kristianna Condominiums on Lot 24 of the Big Mountain View Subdivision. In other words, because Heffelfinger approved a resort liquor license for a building which appeared to be located outside of the BMSR area, the site of the Mountain Monkey should be approved as well. Second, Big Mountain Club Refreshments, LLC, had submitted documents in conjunction with its application showing that it had considered the Kristianna Condominiums to be part of the BMSR

4

lodging facilities when WSI had submitted a resort re-determination application with the DOR in 1995. In that 1995 application, WSI represented that that Kristianna Condominiums were a part of the BMSR based on a contract between WSI and the condominium's owner to provide lodging services. Believing these two facts would support his transfer application for the Mountain Monkey, Hall reapplied.

¶7 DOR received four protest letters after notice of the License transfer re-application was published in a local newspaper. A hearing was scheduled for December 6, 2005, with Heffelfinger presiding as the hearing examiner. One of the protest letters was from Anne Moran (Moran), a local resident who lived near the proposed site of the Mountain Monkey. Moran appeared and gave testimony concerning the site suitability and security issues. Another letter was from Mazurek, representing WSI. Mazurek also appeared at the hearing to present evidence in support of WSI's protest. Because only Moran and Mazurek appeared at the hearing in protest, only their testimony was considered, and the other two letters were disregarded as inadmissible hearsay.

¶8 At the hearing, Heffelfinger heard testimony from a number of individuals concerning whether the proposed site of the Mountain Monkey was within the BMSR area. Jason Wood (Wood), supervisor of the liquor licensing unit for DOR, testified concerning the process for approving a resort under § 16-4-202, MCA, and specifically concerning the history of the BMSR itself. Under § 16-4-202, MCA, a resort developer files an application with DOR for a resort determination. A resort area must meet the following criteria:

(4) (a)  In addition to the other requirements of this code, a resort area, for the purposes of qualification for the issuance of a resort retail all-beverages license, must:

(i)  have a current actual valuation of resort or recreational facilities, including land and improvements, of not less than $500,000, at least half of which valuation must be for a structure or structures within the resort area;

(ii)  be under the sole ownership or control of one person or entity at the time of the filing of the resort area plat referred to in subsection (5);

(iii)  contain a minimum of 50 acres of land;

(iv)  contain a minimum of 100 overnight guest accommodation units, each unit capable of being separately locked by the occupants and containing sleeping, bath, and toilet facilities; and

(v)  provide on the grounds of the resort the recreational facilities that warrant the resort designation being granted.

(b)  For the purposes of this section, "control" means land or improvements that are owned or that are held under contract, lease, option, or permit.

(5)  The resort area must be determined by the resort area developer or landowner by a plat setting forth the resort area boundaries and designating the ownership of the lands within the resort area.  The plat must be verified by the resort area developer or landowner and must be filed with the department prior to the filing of any applications for resort retail all-beverages licenses within the resort area. The plat must show the location and general design of the buildings and other improvements existing or to be built in the resort area. A master plan for the development of the resort area may be filed by the resort area developer in satisfaction of this section.

Sections 16-4-202(4) and (5), MCA.

¶9     Wood testified that DOR records related to the BMSR indicated that it was originally established in 1981, although DOR was currently unable to locate the original file.  Wood testified that WSI applied for resort re-determinations in 1985 to add 1,000 acres to BMSR, in 1993 to add land for a golf course, and in 1995 to include in the BMSR area two lots housing a building known as the Kandahar Lodge.  The Kandahar Lodge is located in Lots 16 and 17 of the Big Mountain View Subdivision, and unlike the rest of that subdivision, those lots are not shaded on the most recent BMSR plat.  Wood

6

testified that in the 1995 resort re-determination WSI had submitted that the Kristianna Condominiums were considered to be a part of the available lodging facilities for the BMSR area based on a contract with the lodge's owners to provide those facilities for the BMSR. Additionally, Wood reviewed the DOR-approved plats of the BMSR to conclude that from legal descriptions dating back to 1993, and including the most recent map approved by DOR in 2003, the Big Mountain View Subdivision (where the proposed site of the Mountain Monkey in the Kristianna Condominiums was located) was within the exterior boundaries of the BMSR, but not considered to be a part of the BMSR area itself.

¶10 In presenting its case-in-chief in support of its protest, WSI's first witness was John Dudis (Dudis), an attorney who was involved in the formation of BMSR in 1981 and who was familiar with its operations since that time. Dudis testified that it was the intent of WSI to exclude certain inholdings within the exterior boundaries of the BMSR from the resort area when it was initially formed because those inholdings were not owned or controlled by WSI. Dudis also testified concerning the inclusion of the Kandahar Lodge in the 1995 the resort re-determination. Dudis testified that the Kandahar Lodge was brought into the BMSR area in order to allow it to receive a resort all-beverages license, and that WSI had a lease agreement with the property's owner. Accordingly, WSI hired a surveyor to redraw the BMSR plat reflecting that Lots 16 and 17 of the Big Mountain View Subdivision, where the Kandahar Lodge was located, was now considered a part of the BMSR area. However, Dudis testified that in his opinion there was never an attempt to officially change the boundaries of the BMSR with respect to any of the other excluded inholdings. Additionally, Dudis testified that the remaining

7

lots of the Big Mountain View Subdivision had always been considered to be excepted from the BMSR area although within the resort's exterior boundaries, and that no efforts had ever been taken to include any of the other lots in the Big Mountain View Subdivision as a part of BMSR as required per § 16-4-202(9), MCA.

¶11 Hall and Womack testified in favor of the application and against WSI's protest. Hall stated that he had initially been told by Ms. Delores Stroh (Stroh) of the DOR that the proposed site of the Mountain Monkey was with the BMSR boundaries. Womack testified that he was the owner of the Kristianna Condominiums, and that documents provided to him by Stroh showed that his property was included in the BMSR boundaries. However, upon further examination Womack admitted that he did not have those documents and neither he, nor his counsel, could produce them.

¶12 Before concluding the hearing, Heffelfinger requested that DOR make an effort to find the original 1981 plat establishing the BMSR area. By an order dated December 12, 2005, Heffelfinger stated that DOR would attempt to find these documents and that all parties would be notified when they were found. All parties submitted additional evidence until the closing of the record as ordered by Heffelfinger on March 17, 2006.

¶13 Thereafter, all parties submitted proposed findings of fact, conclusions of law and memoranda. In Hall's proposed findings of fact and conclusions of law, he maintained that because the original 1981 plat establishing the BMSR could not be located, Heffelfinger could only rely on the evidence presented at the hearing, and that such evidence showed the proposed site of the Mountain Monkey was within the BMSR area. Moreover, Hall pointed out that both the original location of the Bierstube, as well as the

8

Morning Eagle Building (site of the Big Mountain Club as recently approved by DOR) were located within the shaded areas on the BMSR plat, and thus presumptively outside the BMSR area—yet both sites had been granted resort liquor licenses. Hall maintained that, in light of these facts, it would be inconsistent to deny his application based simply on the fact that the proposed site of the Mountain Monkey in the Kristianna Condominiums was also located on a shaded area of the BMSR plat.

¶14 In his memorandum, Hall further argued that § 16-4-202(5), MCA, does not allow WSI to exclude properties within the exterior boundaries of BMSR from the resort area itself. Hall argued that WSI could not selectively "hopscotch" and except certain properties located within the exterior boundaries of BMSR from the BMSR area itself in order to prevent other property holders within the exterior boundaries from receiving all-beverages resort licenses. Hall maintained that the shaded portions on the BMSR plats and accompanying descriptions did not necessarily exclude those properties (including the Kristianna Condominiums) from the BMSR area, but merely complied with the requirement in § 16-4-202(5), MCA, in identifying which lands were owned by WSI and which were not. Additionally, Hall pointed out that in conjunction with its 1995 resort re-determination, WSI submitted that the Kristianna Condominiums were considered lodging facilities for the BMSR area, and that therefore they should still be considered part of the BMSR for purposes of his License transfer application.

¶15 In its proposed findings, conclusions of law and memorandum, WSI argued in favor of rejecting Hall's application. WSI argued simply that the 1995 plat provided the definitive definition of the BMSR area, and that because it specifically excepted Lot 24

9

of the Big Mountain View Subdivision from the BMSR area, Hall's proposed transfer could not be approved. WSI asserted that the plat was the controlling document and that there was no language in § 16-4-202, MCA, or the corresponding administrative rules which prevented it from excluding designated inholdings owned by parties other than WSI from the BMSR area. WSI pointed out that that there could be no dispute that Lot 24 of the Big Mountain View Subdivision in which the Kristianna Condominiums are located had never been included in the BMSR area. WSI also noted that there was a procedure for expanding a resort area under § 16-4-202(9), MCA, but that the protest hearing was not the proper forum in which to do so.

¶16 On June 1, 2006, DOR moved to reopen the record on the basis that it had found the original 1981 plat establishing the BMSR area. Hall objected, arguing in part that the "mysterious disappearance" of the file raised questions concerning its authenticity. However, on June 27 Heffelfinger overruled Hall's objection and granted DOR's motion, allowing the plat to be admitted into the record.

¶17 On July 11, 2006, Heffelfinger issued the Final Decision recommending that Hall's transfer application be denied. Heffelfinger found that based on the documents concerning the determination of the BMSR area beginning in 1981 and continuing to the latest plat in 2003, Lot 24 of the Big Mountain View Subdivision (where the Kristianna Condominiums are located) had always been excepted from the BMSR area, and considered by WSI to be outside the BMSR area. Heffelfinger noted that the Kristianna Condominiums had been under contract to provide lodging for the resort between 1984 and 1998, but pointed out that there was no such contractual relationship at the time of

10

Hall's application. Heffelfinger also discussed the three resort re-determinations occurring in 1985, 1993, and 1995, noting that the plats submitted in conjunction with each re-determination and approved by DOR, showed that Lot 24 of the Big Mountain View Subdivision was an excepted inholding from the BMSR area.

¶18 Heffelfinger also discussed the significance of the change to the BMSR plat in 1993 and its bearing on Hall's application. At that time, WSI entered into a lease agreement with the owner of the Kandahar Lodge, located in Lots 16 and 17 of the Big Mountain View Subdivision, and sought a re-determination adding the lands of that lodge to the BMSR area so that it could obtain a resort liquor license. WSI believed it was required to change the BMSR plat in order to bring those lands into the BMSR area, hired a surveyor to survey the Kandahar Lodge, and reflected those additions by adding Lots 16 and 17 of the Big Mountain View Subdivision to the BMSR area as reflected on the plat. Heffelfinger noted that the most recent plat of the area, revised as of September 10, 2003, showed that only Lots 16 and 17 of the Big Mountain View Subdivision had been re-determined as part of the BMSR area and were no longer shaded on the BMSR plats.

¶19 In his conclusions of law, Heffelfinger concluded that all the resort re-determinations in this case had complied with applicable law and were valid. He also concluded that all the legal descriptions of the BMSR area, from 1981 onward, excluded Lot 24 of the Big Mountain View Subdivision from the BMSR area. Heffelfinger concluded that nothing in § 16-4-202, MCA, or the corresponding administrative rules, prohibited developers from excluding inholdings located with the exterior boundaries of a resort area from the resort area itself. Moreover, Heffelfinger rejected Hall's argument

11

that the Kristianna Condominiums had been included in the BMSR area by WSI in 1995 because although there had been a contract for services between WSI and the former owners of the condominiums, the lands themselves had never been under contract, lease, option, or permit, as required under § 16-4-202(4)(ii), MCA.

¶20    On August 1, 2006, Hall sought judicial review of DOR's Final Decision.  Hall also filed a Motion and Brief to Introduce Additional Evidence into the Record before the District Court on September 29, 2006.  In this Motion, Hall sought to introduce the Big Mountain Club Decision into the record. He did so because in the Big Mountain Club Decision, Heffelfinger rejected Womack's attempts to protest the issuance of the license to Big Mountain Club Refreshments, LLC, based on the fact that the location of the Big Mountain Club was outside of the BMSR area, holding that,

> the protest hearing is not the appropriate forum to adjudicate the resort boundaries or other plat issues.  It is restricted to those matters with respect to the qualifications of an applicant in § 16-4-401, MCA, and grounds for denial of an application stated in § 16-4-405, MCA.  In pursuing his claims related to the Big Mountain Resort Area plat and boundaries, Mr. Womack has recourse to other legal remedies.

¶21    Hall seized upon Heffelfinger's approach to the protest presented in the Big Mountain Club Decision to assert that the protest hearing in his case was likewise not the correct forum in which to determine the BMSR boundaries, and thus deny his application based on the fact that the site of the Mountain Monkey was outside the BMSR area.

¶22    The District Court granted Hall's motion and Heffelfinger issued Supplemental Findings addressing the significance of the Big Mountain Club Decision on November 20, 2006.  Heffelfinger distinguished the Big Mountain Club Decision asserting that in

neither case had he adjudicated the BMSR boundaries, but simply relied upon the evidence before him in order to determine whether the proposed site in each case was within BMSR area. In the case of Womack's protest in the Big Mountain Club Decision, Womack simply failed to present evidence showing that the Big Mountain Club was not in the BMSR area, whereas in Hall's case WSI had presented evidence showing that the Mountain Monkey was outside the BMSR area.

¶23 Hall subsequently sought judicial review of the Supplemental Findings as well. The District Court affirmed the Final Decision and the Supplemental Findings, concluding that Heffelfinger had properly determined that the proposed site of the Mountain Monkey was outside of the BMSR area and that Hall had failed to present any evidence demonstrating that Heffelfinger had wrongfully applied the statutes, or that the facts upon which he relied were in error.

¶24 Hall now timely appeals the District Court's decision. Hall maintains several errors with respect to the proceedings below. First, he alleges that the entire administrative record was never transmitted to the District Court. However, other than this bare allegation, Hall presents no specific evidence supporting this argument, and we decline to address it. Second, Hall alleges the District Court improperly applied the criteria for judicial review of administrative hearings under § 2-4-704, MCA, in its review of the Final Decision and Supplemental Findings. DOR in turn argues that the District Court correctly affirmed the Final Decision and Supplemental Findings.

**ISSUE**

13

¶25    We state the issue on appeal as follows:  *Did the District Court err in affirming the Final Decision and Supplemental Findings?*

## STANDARD OF REVIEW

¶26    "When reviewing an agency decision, a district court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Ray v. Montana Tech. of the U. of Mont.*, 2007 MT 21, ¶ 24, 335 Mont. 367, ¶ 24, 152 P.3d 122, ¶ 24 (citing § 2-4-704(2), MCA).   Instead, the district court reviews an agency's decision to determine if the agency's findings of fact were clearly erroneous and whether its conclusions of law were correct.  *Ray*, ¶ 24.  We apply the same standard to our review of a district court's decision to affirm an agency decision.  *Ray*, ¶ 24.  "A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed."  *Wolf v. Owens*, 2007 MT 302, ¶ 14, 340 Mont. 74, ¶ 14, 172 P.3d 124, ¶ 14 (quotation omitted).

## DISCUSSION

¶27    Hall claims the District Court's affirmance of the Final Decision and Supplemental Findings was in error for the following reasons:  (1) the Final Decision and Supplemental Findings were not supported by substantial evidence, and the findings in support thereof were clearly erroneous; (2) Heffelfinger improperly applied the burden of proof in considering WSI's protest; (3) the protest hearing was not the correct forum in which to determine whether the Mountain Monkey was within the boundaries of the BMSR area; (4) Heffelfinger violated § 2-4-623(4), MCA, insofar as he failed to provide

14

a ruling on each of Hall's proposed finding of fact; (5) the re-opening of the record, and delay in issuance of the final order beyond the ninety days provided in § 2-4-623, MCA, was improper, rendering the final order invalid; and (6) Heffelfinger did not properly interpret § 16-4-202, MCA, incorrectly determined the BMSR boundaries, and applied the statute in a manner that denied Hall the equal protection of the laws.

¶28 Most of these arguments can be rejected on the grounds that they are simply without merit or not sufficiently supported on appeal. For instance, while Hall argues that there was no substantial evidence to support the Final Decision and Supplemental Findings, and that the administrative findings in support thereof are clearly erroneous, he presents no substantive argument or evidence in support of this claim. Instead, Hall simply disagrees with the weight and significance of the evidence presented to the hearing examiner. However, that is not a sufficient basis upon which a district court may reverse an agency's decision. *Ray*, ¶ 24. Thus, argument (1) must be rejected. Similarly, WSI did present sufficient evidence to meet its burden of proof in protesting Hall's application, and Hall points to nothing in the record showing otherwise. Thus, argument (2) must be rejected as well. With respect to argument (3), Hall never properly presented this issue to the hearing examiner or District Court; thus, we decline to address it.

¶29 Hall's argument that Heffelfinger was required but failed to rule on each of his proposed findings under § 2-4-623(4), MCA, is also without merit. Assuming that Heffelfinger was required to address each of Hall's proposed findings, under the doctrine of implied findings he has clearly done so. The doctrine of implied findings "provides that where 'findings are general in terms, any findings not specifically made, but

15

necessary to the [determination], are deemed to have been implied, if supported by the evidence.' " *Caplis v. Caplis*, 2004 MT 145, ¶ 32, 321 Mont. 450, ¶ 32, 91 P.3d 1282, ¶ 32 (quoting *State v. Wooster*, 2001 MT 4, ¶ 18, 304 Mont. 56, ¶ 18, 16 P.3d 409, ¶ 18). The only specific allegation Hall raises in this regard is that Heffelfinger failed to conclude that the Kristianna Condominiums were part of the BMSR based on WSI's 1995 resort re-determination, in which it listed the Kristianna Condominiums as part of the resort because of the lodging contract between its owners and WSI. However, Heffelfinger did directly rule on this issue. (Opinion at ¶ 19). Thus, argument (4) must be rejected as well. Additionally, contrary to Hall's assertions under argument (5), Heffelfinger did issue a decision within the timeframes allowed for in § 2-4-623(1)(a), MCA. Although the record was first closed on March 17, 2006, Heffelfinger issued an order on June 2, 2006, to consider reopening the record in response to a motion by DOR to admit the recently discovered 1981 plat of the BMSR. Heffelfinger gave the parties an opportunity to brief DOR's motion and then granted it on June 27, 2006. It was at that time that the matter was considered submitted for a final decision. Heffelfinger then issued a decision on July 11, 2006. The time within which the Final Decision was issued was lawful under § 2-4-623(1)(a), MCA. Thus, argument (5) is rejected as well.

¶30 Accordingly, we are left to consider whether Heffelfinger correctly interpreted § 16-4-202, MCA, in determining the BMSR area, and whether he applied the statute in a manner that denied Hall the equal protection of the laws.

¶31 As noted above, Heffelfinger was presented with several DOR-approved plats of the BMSR area showing that Lot 24 of the Big Mountain View Subdivision, where the

16

Kristianna Condominiums are located, is within the exterior boundaries of the BMSR but excepted from the resort area itself as an excluded inholding. Hall maintains that once an exterior boundary is established, everything within that boundary must be included in the resort area. Hall claims that Heffelfinger erroneously interpreted § 16-4-202, MCA, in a manner which allowed WSI to selectively exclude properties within a designated resort boundary from being included in the resort area itself. Hall claims his argument is supported by the plain language of the statute. We disagree.

¶32 "[I]n construing a statute, 'the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.' " *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 115, 303 Mont. 274, ¶ 115, 16 P.3d 1002, ¶ 115 (quoting § 1-2-101, MCA). "Where the plain language of the statute is clear and unambiguous, no further interpretation is required." *State v. Kroll*, 2004 MT 203, ¶ 17, 322 Mont. 294, ¶ 17, 95 P.3d 717, ¶ 17. Moreover, "[w]e must endeavor to avoid a statutory construction that renders any section of the statute superfluous or fails to give effect to all of the words used." *Mont. Trout Unlimited v. Mont. Dept. of Nat. Res. and Conservation*, 2006 MT 72, ¶ 23, 331 Mont. 483, ¶ 23, 133 P.3d 224, ¶ 23.

¶33 Hall's construction is not supported by the plain language of the statute. Clearly, the statutes describing the requirements of a resort plat contemplate that some areas within the resort boundaries might not be owned by the resort developer. *See* § 16-4-202(5), MCA ("The resort area must be determined by the resort area developer or landowner by a plat setting forth the resort area boundaries *and designating the*

17

*ownership of the lands within the resort area.*") (emphasis added). Properties not owned by a developer, but within resort boundaries, can be included within the resort area if they are brought under the resort developer's "control" as defined in the statute. Thus, the statute contemplates situations where properties not owned by a resort developer can be brought into the resort area if "held under contract, lease, option, or permit." Section 16-4-202(4)(b), MCA. If Hall's construction was adopted, there would be no need for the statute to draw this distinction, and the plain language of the statute would be rendered superfluous, because the drawing of a resort boundary would automatically include within the resort area all properties lying within a resort boundary, irrespective of who owned or controlled them. Thus, we conclude that Heffelfinger's construction of § 16-4-202, MCA, was correct and the District Court did not err in affirming the Final Decision and Supplemental Findings.

¶34 Hall correctly points out that the Kristianna Condominiums were listed by WSI as being part of the BMSR in its 1995 re-determination application because WSI had a lodging contract with the Kristianna Condominiums at that time. Because WSI did not ever own or "control" this property per § 16-4-202(4)(b), MCA, DOR arguably erred in allowing it to even be considered in WSI's application. However, this error would not suffice to place the Kristianna Condominiums within the resort boundaries precisely because WSI never owned or controlled them. Moreover, from 1981 onward, the location of the Kristianna Condominiums in Lot 24 of the Big Mountain View Subdivision has been within the exterior boundaries of the BMSR, but excepted from the BMSR area itself by virtue of the legal descriptions on the various plats.

18

¶35 Lastly, Hall argues that Heffelfinger applied § 16-4-202, MCA, in a manner which denied him equal protection of the laws. As evidence for this claim, he points to Heffelfinger's order in the Big Mountain Club Decision wherein he approved the application of Big Mountain Club Refreshments, LLC, for a liquor license in the Morning Eagle Building which, as Hall notes, is located in one of the excepted portions of the BMSR area. In other words, although the Kristianna Condominiums in Lot 24 of the Big Mountain View Subdivision and the location of the Big Mountain Club in the Morning Eagle Building are both within the exterior boundary of BMSR, both are also located in properties excepted from the BMSR area itself. Yet, Heffelfinger denied Hall's application and granted the application of Big Mountain Club Refreshments, LLC. Hall argues that the inconsistent application of the statutes by Heffelfinger raises the concern that resort protest hearings can be used by competitors to prevent competition, and that the application of § 16-4-202, MCA, by Heffelfinger was inconsistent and denied him the equal protection of the laws.

¶36 "Montana's equal protection clause ensures that Montana's citizens are not subject to arbitrary and discriminatory state action." *Wilkes v. Mont. State Fund*, 2008 MT 29, ¶ 12, 341 Mont. 292, ¶ 12, 177 P.3d 483, ¶ 12 (quotation omitted). The facts presented by Hall arguably suggest that Heffelfinger's treatment of the same issue in both the Big Mountain Club Decision and the case before us now was different and possibly arbitrary. However, other than alleging a general equal protection violation, Hall does not provide any legal argument to support his claim. He does not identify the level of scrutiny to be applied, nor does he supply any authority to justify an application of an equal protection

19

analysis to two distinct DOR license approval proceedings. Moreover, he offers no remedy for the perceived inequity. Lacking a well-supported argument and corresponding rebuttal from DOR, we are simply not equipped to determine whether any distinction in treatment by DOR was or was not justified. Hall bears the burden of establishing an equal protection violation. *See In re Estate of Merkel*, 190 Mont. 78, 81, 618 P.2d 872, 875 (1980). He has failed to carry that burden here.

## CONCLUSION

¶37 For these reasons, we conclude the District Court did not err in affirming the Final Decision and Supplemental Findings in this matter.

/S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE