JUSTICE BAKER,
dissenting.
¶37 As the Court acknowledges (Opinion, ¶ 23), we apply a presumption in child custody cases “that the court carefully considered the evidence and made the correct decision.” In re Marriage of Everett, 2012 MIT 8, ¶ 29, 363 Mont. 296, 268 P.3d 507 (quoting N.S., ¶ 18); Marriage of Tummarello, ¶ 34. Unless this Court can determine from the record that the findings upon which a modification decision is predicated are clearly erroneous, we do not disrupt the decision of a district court in a child custody matter absent a clear abuse of discretion. Jacobsen v. Thomas, 2006 MT 212, ¶ 13, 333 Mont. 323, 142 P.2d 859; In re Arneson-Nelson, 2001 MT 242, ¶ 22, 307 Mont. 60, 36 P.3d 874; In re J.M.D., 259 Mont 468, 473, 857 P.2d 708, 712 (1993). ¶38 Unquestionably, a finding of changed circumstances is a “prerequisite” to amending a prior parenting plan. Jacobsen, ¶ 17. But that is a factual finding, which-like all other factual findingsfis reviewed for clear error. Jacobsen, ¶ 13. The appellant faces the high hurdle of demonstrating abuse of discretion and must show that the district court acted “arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.” Albrecht v. Albrecht, 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339. “Arbitrary”is synonymous with a ‘failure to exercise honest judgment,” “depending on the will alone[,]” or “without consideration and regard for facts and circumstances presented.” Black’s Law Dictionary 104 (6th ed., West 1990).
¶39 To say the District Court here acted either unreasonably or arbitrarily without employment of conscientious judgment gives insufficient effect to our standards of review, dismisses the role of the trial judge, and presumes appellate judges collectively can make a better judgment about a child’s life from reading a transcript. Judge Langton held a hearing at which both parties were present in person. He watched them on the witness stand and observed their testimony. He heard testimony from other witnesses for the parties, including Leanah’s friend and child care provider who related (without obj ection) C.A.W.’s fears and concerns that he would regress in the successes for which he had fought to improve his grades. He interviewed eleven- *231 year-old C.A.W. in his chambers. Discounting his factual finding that the circumstances of this family had changed does not give appropriate deference to Judge Langton or a fair reading to the record. In the time since Charles and Leanah divorced, Charles married a woman with three children who live with them full-time; there are often arguments in Charles’s family home, which C.A.W. described to Judge Langton as ‘fighting,”‘yelling,” and “cussing”; C.A.W.’s development between his preschool years to fifth grade resulted in struggles with academics, but he showed progress with the help of teachers at the school he has attended since first grade; and C.A.W. told the judge he wants to live in his mother’s home with a calmer environment where he feels it is easier for him to do homework. These circumstances have arisen since the prior plan and were unknown to the court at the time the plan was entered. Section 40-4-219(1), MCA; Jacobsen, ¶ 16. We have cited the blending of families as one factor a district court may consider. Clay, ¶¶ 25-26. Neither the court nor C.A.W.’s parents could have anticipated C.A.W.’s needs upon the blending of Charles’s family and as C.A.W. matriculated through school. As Judge Langton observed, unlike the typical request to modify a parenting plan, Leanah’s request sought to preserve the child’s status quo, which the court determined was in C.A.W.’s best interests.
¶40 While the evidence in the record is limited, it is a gross overstatement to say the district court acted arbitrarily in determining these new factors in C.A.W.’s life amounted to a change in the circumstances of the child for purposes of §40-4-219(1), MCA. The statute expressly grants the district courts discretion to make that determination; it does not list specific factors that must be found before such a change may be deemed sufficient or require that a change in circumstances be “substantial”-a factor the Court has imported in its analysis here. Opinion, ¶ 23; see §1-2-101, MCA. The statute sets no threshold other than that the amendment be necessary to serve the best interest of the child. Section 40-4-219(1), MCA. Judge Langton was in a far better position than are we to decide the change was sufficient to keep the parties’ current parenting schedule in place. ¶41 We must remember that the focus of any parenting plan proceeding is not the parents’ lives, or whether the parents are staying true to agreements they made years earlier affecting their child. The focus is the child, and what is in that child’s best interest. Robison, ¶ 27 (the burden of proof under §40-4-219, MCA, is the best interests of the child standard). In making that determination, the trial court considers the criteria stated in §40-4-212, MCA.
These criteria include the wishes of the child’s parent or parents; *232 the wishes of the child; the interaction and interrelationship of the child with the child’s parent or parents and siblings and with any other person who significantly affects the child’s best interests; the child’s adjustment to home, school and community; and continuity and stability of care.
Guffin v. Plaisted-Harman, 2010 MT 100, ¶ 29, 356 Mont. 218, 232 P.3d 888 (quoting Robison, ¶ 28). Judge Langton looked carefully at the wishes of C.A.W. when interviewing him in chambers; learned about his relationship with his step-siblings; and heard testimony on the importance of continuity and stability in his home, school, and community. Judge Langton made his determination based upon a conscientious review of these factors. While the Court faults him for checking boxes on a form order, such forms were created by a Commission of this Court in an effort to facilitate the handling of pro se family law matters by district courts increasingly burdened with cases brought by self-represented litigants in such matters.[1] Judge Langton’s reasoning was reflected in his comments from the bench, in which-as the Court quotes (Opinion, ¶ 19)-he made clear his ruling was based on the best interest of the parties’ child, the child’s wishes, and the different environments at the two households. We do not require specific findings on each factor in the statute, only that the district court “set forth the ‘essential and determining facts upon which [it] rested its conclusion on the custody issue.’ ” Carter, ¶ 14 (citations omitted). And we have held the district court’s findings on a modification petition will be upheld as long as they imply a finding of change in circumstances. Burk, ¶ 11. This is consistent with our application of the doctrine of implied findings in reviewing findings of fact. That doctrine provides that “where ‘findings [of fact] are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence.’ ” In re Transfer of Location for Mont. All-Alcoholic Bevs. Resort, 2008 MT 165, ¶ 29, 343 Mont. 331, 184 P.3d 324 (quoting Caplis v. Caplis, 2004 MT 145, ¶ 32, 321 Mont. 450, 91 P.3d 1282, and State v. Wooster, 2001 MT 4, ¶ 18, 304 Mont. 56, 16 P.3d 409). Here, the evidence supports the District Court’s finding of changed circumstances.
¶42 Again, we have consistently refrained that the district judge is in a superior position to this Court in making such assessments. In re *233 J.M.D., 259 Mont. at 473, 857 P.2d at 712; In re Marriage of Graham, 2008 MT 435, ¶ 8, 347 Mont. 483, 199 P.3d 211 (citing Czapranski v. Czapranski, 2003 MT 14, ¶ 10, 314 Mont. 55, 63 P.3d 499). The presumption of the district court’s careful consideration and correct decision making in this arena has been upheld many times. In re Marriage of Hedges, 2002 MT 204, ¶ 17, 311 Mont. 230, 53 P.3d 1273 (noting our ‘firm belief’that the trial court is in a better position than this Court); In re Marriage of McKenna, 2000 MT 58, ¶ 17, 299 Mont. 13, 996 P.2d 386 (‘ft is not this Court’s role to second-guess the fact-finding function of the District Court” as the trial court is in a better position to resolve child custody issues). While the Court expresses concern that allowing the parents to upend their prior agreement will invite more modification proceedings, consider the impact of this Court’s willingness to substitute its judgment for that of the district courts in determining a child’s best interest.
¶43 The Court agrees with Charles’s contention that D’Alton compels reversal of Judge Langton’s order. There, applying the same abuse of discretion standard, we found the father had not met his burden of showing that the district court’s findings were clearly erroneous, nor did he substantiate his claim that the court abused its discretion. D’Alton, ¶ 11. We upheld the District Court’s conclusion that the mere “passage of six (6) years” and the termination of the children’s nanny were insufficient to support a finding of changed circumstances. D’Alton, ¶ 11. Our holding was not that a child’s development can never be considered a factor for purposes of “changed circumstances.” Rather, we simply refused to substitute our judgment for that of the fact-finder, holding instead that the district court did not act without employment of conscientious judgment in making its conclusion in that particular set of circumstances. We should do the same here.
¶44 Upholding the District Court’s findings in this case properly gives credence to our standards of review. Application of our standards of review does not always produce identical results in what may seem to be similar cases. Compare N.W. Truck & Trailer Sales v. Dvorak, 265 Mont. 327, 332-35, 877 P.2d 31, 34-36 (1994) (District Court did not abuse its discretion in ruling that the litigant demonstrated excusable neglect and good cause justifying an extension of time for filing a notice of appeal) with Sadowsky v. City of Glendive, 259 Mont. 419, 423, 856 P.2d 556, 559 (1993) (District Court did not abuse its discretion in ruling that the litigant failed to demonstrate excusable neglect or good cause justifying an extension of time for filing a notice of appeal). The facts present in D’Alton are not the same as those *234 presented here. Like N.W. Truck and Sadowsky demonstrate, the standard of review serves as a check on abuse of a district court’s authority, but not as a means of imposing what we think might be a better result were we in the district judge’s position.
¶45 The law can be a poor mechanism for crafting solutions to disputes that have their genesis in personal relationships. But it is the best dispute-resolution system there is, and the sole recourse for separated families. The system only works if we give appropriate deference to those in a position to watch, listen, observe and judge the human interactions and communications on which those relationships are built. The bottom line is that, in an ordinary custody case such as this, the Montana Supreme Court should not be deciding where a child attends the sixth (or seventh) grade.
¶46 Finally, I disagree that Judge Langton gave veto power to C.A.W. over his residential schedule. While the court stated during the hearing that the child was to write a letter to his parents each summer, the written parenting plan that was entered by the court and controls the parenting of C.A.W. adopted Leanah’s proposed residential schedule and said nothing about an automatic modification at the child’s wishes. Any change in the parenting plan would have to be presented by motion and determined by the court. Section 40-4-219, MCA.
¶47 I respectfully dissent.
CHIEF JUSTICE McGRATH and JUSTICE MORRIS join in the dissenting Opinion of JUSTICE BAKER.

http://courts.mt.gov/supreme/boards/selfrepresented_litigants/approved.mcpx (last accessed 02/23/2012).