FILED

October 8 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0088

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 290N

IN THE MATTER OF THE ESTATE OF:

CLEO M. BEALS,

    Deceased.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixteenth Judicial District,<br>In and For the County of Rosebud, Cause No. DP 08-18<br>Honorable Joe L. Hegel, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

                David M. McLean; McLean & McLean, PLLP; Anaconda, Montana

        For Appellee:

                Thomas E. Towe, Tucker P. Gannett; Towe, Ball, Mackey, Sommerfeld & Turner, PLLP; Billings, Montana

Submitted on Briefs: July 31, 2013

Decided: October 8, 2013

Filed:

_____

Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Bob Beals, Byron (Bus) Beals, and Bonny Rieckmann are the three children of W.E. (Dude) and Cleo Beals. Dude owned a successful mortuary and furniture business in Forsyth, Montana. His oldest son, Bob, also worked in the family business. When Dude died in 1994, his estate was probated in accordance with his 1963 will. The will provided that all of Dude's property "of whatsoever nature, kind or description" should go to Cleo, with anything remaining upon her death to his three children to "share and share alike." The bulk of the property, however, passed outside the will to Cleo and the children through life insurance beneficiary designations and accounts in joint tenancy with rights of survivorship.

¶3 In 1995, after the court appointed Bus as Cleo's guardian and estate conservator, Bob and his son prepared an "Accounting of the Holdings of W.E. 'Dude' Beals as of June 1, 1994 to the Current Assets of Cleo M. Beals as of October 31, 1995." This accounting reflected two insurance policies in the name of Dude alone that listed Bob as the sole beneficiary, but Bob noted in the accounting that the proceeds from these were placed in a tax free account to be held for Cleo's future health care. There were also two

2

bank accounts held in joint tenancy between Dude and Bob. Again, Bob noted that the two accounts were being held separately from Cleo's other assets to be used for her heath care if needed.

¶4 Cleo died on August 17, 2007. Pursuant to her will, the court appointed Bob as her personal representative. Cleo's will, drafted at the same time as Dude's, provided that her entire estate would go to Dude or, if he did not survive her, to her children equally. During the probate proceeding, Bus and Bonny brought a petition to compel Bob, as personal representative, to include certain assets in Cleo's estate, including the four accounts held in Bob's name alone. Bus and Bonny claimed Bob was not following their parents' intent that the estate be divided equally among the children. In their petition to the court, Bus and Bonny raised seven categories of items that they were requesting the court order Bob to include in the estate. The items at issue on appeal are the four accounts in Bob's name, as well as two life insurance policies (Hartford and MONY). Bob agreed that the proceeds of the latter two policies were property of the estate, but he claimed that he already had deposited those funds into the estate.

¶5 The District Court held a two-day bench trial in May 2012 to settle the issues raised in the petition. On January 2, 2013, the court filed findings of fact, conclusions of law and an order. The court found that Dude's overriding intent in setting up his estate was that his money would be used to support Cleo during her lifetime and then pass equally to his children. Because of this intent, the court concluded that Bob was unjustly enriched by retaining the assets in the four accounts and ordered the creation of a

3

constructive trust for those assets to become part of Cleo's estate. Along with the four accounts, the court also ordered Bob to return the proceeds of the Hartford and MONY life insurance policies to the estate.

¶6 Bob appeals the District Court's findings and conclusions. Bob argues that the District Court erred in finding that Dude, with Bob's help, arranged a maze of accounts intending to avoid probate. Bob also alleges that the court erred in finding that the Hartford and MONY insurance proceeds, payable to Cleo, were not already paid into the estate. Finally, Bob objects to the imposition of a constructive trust, arguing that he was not unjustly enriched and that the District Court improperly created the trust.

¶7 The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs the appellate court to review and determine questions of fact as well as questions of law. *In re Estate of McDermott*, 2002 MT 164, ¶ 22, 310 Mont. 435, 51 P.3d 486. We review a district court's findings of fact to determine if they are clearly erroneous and its conclusions of law to determine whether they are correct. *McDermott*, ¶ 22.

¶8 First, we conclude that the District Court's finding that Bob assisted Dude in creating various accounts in order to avoid probate was not material to the court's decision. We accordingly reject Bob's argument that it is ground for reversal. The District Court did not rely on the fact that Bob helped Dude avoid probate. In fact, the court observed that Montana law does not require any breach of a fiduciary obligation or wrongdoing before the imposition of a constructive trust. Instead, the court relied on

4

Bob's understanding that Dude's overriding intent in naming Bob as a joint account holder and beneficiary was that the assets be held for Cleo's benefit, then equally divided among the children. The record supports this finding. In Bob's accounting of Cleo's holdings, he listed the assets at issue as being held for Cleo's health care. Bob admitted in his testimony that his retention of the accounts was on "an honor system," and that the accounts were Cleo's money, often held in his name only as a matter of convenience. He also acknowledged a discussion in which his father said that "once [Cleo] was taken care of, once she died, then the three [siblings] were supposed to divide up the property equally." There was no objection to the court's consideration of this evidence and we decline to overturn the District Court's finding on this point.

¶9 Bob also argues that the court incorrectly ordered the return of the Hartford and MONY proceeds to the estate. Bob points out that these insurance proceeds were not the subject of any of the Findings of Fact or Conclusions of Law, and they were first mentioned in the District Court's Order directing Bob to pay the proceeds to the estate. This Court has adopted the doctrine of implied findings for the purpose of reviewing findings of fact. The doctrine provides that where findings of fact "are general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *Kluver v. PPL Mont., LLC*, 2012 MT 321, ¶ 41, 368 Mont. 101, 293 P.3d 817 (quoting *In re Transfer of Location for Mont. All-Alcoholic Bevs. Resort*, 2008 MT 165, ¶ 29, 343 Mont. 331, 184 P.3d 324).

5

¶10    Here, because the court ordered the assets paid back into the estate, it impliedly found that Bob had not yet done so. This implied finding is supported by the evidence. While Bob claimed that he accounted for these policies and purchased a certificate of deposit after depositing them into Cleo's checking account, the record does not support his claim. Even in his own testimony, Bob could not provide a direct response or remember exactly where the money came from and where it went. After examining the bank statements and his testimony, we conclude that Bob fails to meet his burden of proving clear error in the District Court's findings.

¶11    Finally, Bob challenges the imposition of a constructive trust. The District Court relied on § 72-33-219, MCA, in conjunction with our ruling in *McDermott*, ¶¶ 25-26, for the proposition that imposing such a trust no longer requires a showing of fraud or other wrongful acts on the part of the defendant. Section 72-33-219, MCA, allows a constructive trust to arise "when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the holder were permitted to retain it." *See also N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 30, 368 Mont. 330, 296 P.3d 450. Principles of equity allow courts broad discretion in creating constructive trusts. *N. Cheyenne Tribe*, ¶ 32 (citing *Eckart v. Hubbard*, 184 Mont. 320, 325, 602 P.2d 988, 991 (1979)).

¶12    *McDermott* is controlling here. There, we upheld a district court's imposition of a constructive trust after a son attempted to retain property deeded to him by his father when there was evidence that the property was meant to be used for the benefit of his

6

disabled brother. *McDermott*, ¶ 28. Similar to the beneficiary and account designations in the present case, the deed met the requirements of a grant solely to the son. *McDermott*, ¶ 7. Bob does not distinguish *McDermott* or argue that it has no application to the instruments and accounts at issue here. He argues only that he was the clearly named joint tenant or beneficiary on the accounts and was not unjustly enriched. Given the District Court's finding regarding Bob's understanding of Dude's overriding intent and our broad policy for allowing a court to impose a constructive trust in the interest of equity, we conclude that Bob has not demonstrated legal error in the District Court's determination that Bob was unjustly enriched or its imposition of a constructive trust.

¶13 We have determined to decide this case pursuant to Section 1, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶14 Affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ LAURIE McKINNON